PEOPLE v CHARLES O. WILLIAMS

OPINION OF THE COURT

1. CRIMINAL LAW—APPEAL AND ERROR—DISCRETION—ABUSE OF DIS-
CRETION—WORDS AND PHRASES.

The applicable standard for review of a trial judge's alleged
abuse of discretion is that an appellate court will not inter-
fere with the discretion of the trial judge unless a clear
abuse thereof is manifest in the result reached below since
the term "discretion" itself involves the idea of choice, of
an exercise of the will, of a determination made between
competing considerations and, in order to have an "abuse"
in reaching such determination, the result must be so palpably
and grossly violative of fact and logic that it evidences
not the exercise of will but perversity of will, not the exercise
of judgment but defiance thereof, not the exercise of reason
but rather of passion or bias but a somewhat stricter stand-
ard should be observed in criminal cases where loss of freedom
by incarceration is often the penalty that a convicted defend-
ant will suffer.

2. CRIMINAL LAW—CONTINUANCES—DISCRETION—DUE PROCESS.

In a criminal case a continuance is traditionally within the dis-
cretion of the trial judge and it is not every denial of a
request for more time that violates due process even if the
party fails to offer evidence or is compelled to defend without
counsel; contrariwise, a myopic insistence upon expeditiousness
in the face of a justifiable request for delay can render the
right to defend with counsel an empty formality; there are

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 159.
[2, 7] 17 Am Jur 2d, Continuance §§ 3, 27 et seq.
[3, 4] 21 Am Jur 2d, Criminal Law § 309 et seq.
[5] 17 Am Jur 2d, Continuance § 27 et seq.
[6, 9] 17 Am Jur 2d, Continuance § 35.
Withdrawal or discharge of counsel in criminal case as ground
for continuance. 66 ALR2d 298.
[8] 21 Am Jur 2d, Criminal Law § 321.

no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process; and the answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

3. Constitutional Law—Assistance of Counsel—Criminal Law.

The right to assistance of counsel is a precious constitutional right, probably the most important right of any defendant in a criminal trial; it is guaranteed by the United States Constitution and has been included in every Constitution of this state since Michigan entered the Union (US Const, Am VI; Const 1835, art 1, § 10; Const 1850, art 6, § 28; Const 1908, art 2, § 19; Const 1963, art 1, § 20).

4. Constitutional Law—Assistance of Counsel—Criminal Law —Courts.

The right to assistance of counsel has been jealously protected by the courts and is of critical importance to any defendant in a criminal trial; hence, whenever this right is asserted, the trial court must take special care to insure that it is protected.

5. Criminal Law—Courts—Delay—Fair Trial—Continuances.

Courts must do everything necessary to avoid delay but this cannot include interfering with a defendant's right to a fair trial; the prompt disposition of criminal cases is to be commended and encouraged but the desire of the trial courts to expedite court dockets is not a sufficient reason to deny an otherwise proper request for a continuance.

6. Criminal Law—Continuance—Attorney and Client—Motion to Withdraw as Counsel—Constitutional Law—Assistance of Counsel—Discretion.

The trial court abused its discretion in denying defendant's counsel's motion to withdraw and in preventing defendant from changing attorneys and granting a continuance in a criminal case where: (1) defendant was asserting a constitutional right—the right to counsel; (2) he had a legitimate reason for asserting this right—an irreconcilable *bona fide* dispute with his attorney over whether to call his alibi witnesses; (3) he was not guilty of negligence; and (4) the trial court was incorrect in stating that defendant had caused the trial to be adjourned several times.

DISSENTING OPINION
BLACK and ADAMS, JJ.

7. CONTINUANCE—TRIAL—DISCRETION.
   *The granting of a continuance rests within the sound discretion of the trial court.*

8. CRIMINAL LAW—COUNSEL.
   *A defendant is not entitled to substitute counsel indefinitely and thereby thwart the fair administration of justice.*

9. CONTINUANCE—WITHDRAWAL OF COUNSEL—DISCRETION—PREJUDICE.
   *Trial court's denial of defense counsel's motion to withdraw and failure to grant a continuance was not an abuse of discretion where there had been numerous prior delays in bringing the matter to trial, the defendant was ably represented at trial and was not prejudiced by denial of the motion.*

Appeal from Court of Appeals, Division 1, Holbrook, P. J., and R. B. Burns and O'Hara, JJ., affirming Recorder's Court of Detroit, Geraldine Bledsoe Ford, J. Submitted October 5, 1971. (No. 4 October Term 1971, Docket No. 53,024–1/2.) Decided February 25, 1972.

26 Mich App 46 reversed.

Charles Oscar Williams was convicted of felonious assault and armed robbery. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, for defendant on appeal.

SWAINSON, J.  Charles O. Williams was found guilty by a jury in Recorder's Court for the City of Detroit on November 9, 1967, of felonious assault[1] and robbery armed.[2]  The Court of Appeals affirmed.  26 Mich App 46.  On the day the trial began, defendant's counsel, Mr. Monash, made request that he be allowed to withdraw because the defendant Williams had retained a Mr. Goldfarb as his counsel.  The trial court denied the motion and ruled that no continuance would be granted to allow a substitution of counsel and that the case must proceed to trial with Mr. Monash serving as defendant's counsel.  We granted leave to appeal to consider whether the trial court committed reversible error in denying defense counsel's motion to withdraw, and the defendant's motion for a continuance in this matter.  384 Mich 775.

The critical facts which are relevant to our decision are found in the discussion which occurred on the first day of trial, November 8, 1967, between Judge Ford, Mr. Monash (defense counsel), and defendant Charles O. Williams:

*"The Court Clerk:*  People versus Charles O. Williams, charged with one, robbery armed and two, felonious assault.

*"Mr. Poehlman* [*assistant prosecuting attorney*]: People are ready.

*"Mr. Monash:*  The defense is not ready.  I know you have my notice to withdraw, which I filed at noon today.  I left your courtroom and I didn't realize at the time that I had a call from Mr. Albert Goldfarb and Mrs. Williams, who is here, and she contacted Mr. Goldfarb about having Mr. Goldfarb substitute for me.

---

[1] MCLA 750.82; MSA 28.277.

[2] MCLA 750.529; MSA 28.797.

"Mr Goldfarb is in a murder trial before Judge Olsen, but he was here for about a half an hour. Mr. Batts called Judge Olsen, and I understand that Mrs. Williams, in my presence told me that Mr. Williams did not want me as his attorney. Mr. Goldfarb is talking about substituting for me. That is right, isn't it, Mrs. Williams?

"*The Court:* Is there anything else?

"*Mr. Monash:* In the motion yesterday morning something very drastic came up between my client and I, and I feel that I could not do the job expected of me, and I feel that it would be an injustice for him to have me for an attorney and for me to go into trial.

"*The Court:* I am concerned, Mr. Monash, because this case has been up; this is about the fourth time.

"I heard Mr. Williams the last time he was here and I heard you the last time. The only thing I am concerned about is competence. I know that you are, and we are going to proceed to trial. Is this going to be an adjourned [*sic*—jury?] trial or a waiver?

"*Mr. Monash:* Well, I have to talk to him.

"*The Court:* You have been on this case for quite a while, so I just want to know if you want a jury or if it is going to be waived.

"*Mr. Monash:* Could I go into the jury room privately for five minutes?

"*The Court:* Go ahead, and make up your mind right away. I am denying your motion because it does not speak of anything of substance. I know that you are competent.

"Mr. Williams, I don't know what his views are in this matter, so as far as personality conflicts are concerned, but personality conflicts are not the matter with which the Court is concerned.

"This matter has been adjourned over and over again for one reason or another. Mr. Williams has had sufficient time if he wished to retain someone

else. The Court feels that this is a delaying tactic and nothing more.

"*Mr. Monash:* It is not a delaying tactic, your Honor.

"*The Court:* I am not faulting you.

"*Mr. Monash:* I have no such intentions, your Honor.

"*The Court:* I am not accusing you, but we will proceed to trial and if you will advise us promptly, please.

"*Defendant:* The reason why I feel that I must speak now to insure you that there is no delaying tactic involved here on my part is because since June, when this case was first assigned to you, as I understand, I did not see my attorney until the last time we appeared here in this courtroom.

"*Mr. Monash:* You saw me in the county jail before.

"*Defendant:* When I saw you in October you told me the case had been assigned in June to here. The last time I saw him was in June since October. I told him then about last month, which was the first time I had seen him since June, and I understand that it was assigned in June. Somebody told me the case had been assigned to you in June.

"I told him there were two witnesses I wanted, and he has not made preparation to get the witnesses for my defense, because it seemed that he was apparently so sure that I would plead to some charge that I could not have committed. This is why I told my mother that due to the fact that he has not been working on the case, it appears that I ask that I get someone to try to bolster my defense because I am not guilty of a robbery. I never robbed anybody in my life.

"*The Court:* Mr. Williams, we are going to proceed to the trial today.

"*Defendant:* But, he has not gotten my witnesses.

"*The Court:* I am sure that he has made whatever efforts that are required to prepare the case. You

have talked to him about it I am sure, and he has prepared the defense to the best of his ability.

"Whether or not he has your witnesses does not mean that he is preparing it the way you want him to prepare. I am confident of Mr. Monash. He is competent, and we are proceeding to trial, Mr. Williams.

"*The Court Clerk:* A-135642. People versus Charles O. Williams. Count one, robbery armed and count two, felonious assault.

"*Mr. Poehlman:* People are ready.

"*Mr. Monash:* Defendant is ready. He wants a jury trial, your Honor.

"*Defendant:* I want a jury trial.

"*The Court:* Mr. Williams, I have known Mr. Monash for a long time. He was a prosecuting attorney for the County of Wayne from 1946 to 1948 and he is recognized as a very highly competent lawyer, and you have had the opportunity to retain someone else if you wished to retain someone else and, of course, the court has to be concerned about the people here, about the complaining witness and about the other witnesses here. You are not the only one concerned.

"We have adjourned this matter for the same reasons many times, and we are going to go to trial today.

"*Mr. Monash:* Your Honor, I would like to say—

"*The Court:* Does it have anything to do with this matter?

"*Defendant:* Your Honor, when I was arrested, they took  *  *  *

"*The Court:* If there are any matters that have to be brought up in the course of the trial, Mr. Monash will bring them up properly.

"Alright. Draw a Jury."

The applicable standard for review of a trial judge's alleged abuse of discretion is stated in

*Spalding* v *Spalding,* 355 Mich 382, 384–385 (1959) :[3]

"We have held repeatedly, and we again hold, that we will not interfere with the discretion of the trial chancellor in these cases unless a clear abuse thereof is manifest in the result reached below. The kind of determination before us requires a weighing of human and economic factors of the utmost complexity, a weighing that can best be accomplished at the local level, not in these chambers. In view of the frequency with which cases are reaching this Court assailing the exercise of a trial court's discretion as an abuse thereof, we deem it pertinent to make certain observations with respect thereto in the interests of saving expense to the litigants and avoiding delay in reaching final adjudication on the merits. Where, as here, the exercise of discretion turns upon a factual determination made by the trier of the facts, an abuse of discretion involves far more than a difference in judicial opinion between the trial and appellate courts. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. So tested, we perceive no error in the proceedings below nor in the determination made."

The *Spalding* case involved an appeal from an order of the trial court which modified a divorce decree and increased plaintiff's child allowance from $35 per week plus extraordinary medical expenses, to $42.50 per week plus extraordinary medical expenses. Plaintiff, on appeal, contended that the chancellor had abused his discretion by not increas-

---

[3] For a recent case reaffirming this rule in a civil context, see *Wendel* v *Swanberg,* 384 Mich 468 (1971).

ing the amount to $50 per week, as she had requested.
While the rule laid down in *Spalding* is generally
the correct rule to apply, a somewhat stricter stand-
ard should be observed in criminal cases where loss
of freedom by incarceration is often the penalty that
a convicted defendant will suffer.

In *People* v *Moss*, 253 Cal App 2d 248; 61 Cal Rptr
107 (1967), the Court reversed defendant's convic-
tion of armed robbery and ordered a new trial. Af-
ter the jury had been selected, but before the trial
commenced, defendant's attorney informed the court
that a strong disagreement had arisen between him-
self and the defendant over trial strategy. The at-
torney stated that this had arisen within the previ-
ous hour. The trial judge asked defendant if he
wanted to represent himself and he stated that he
did. The court said that there was no other attorney
available and that since the jury had been impaneled
he would not grant a continuance. The appellate
Court stated (pp 249–251):

"We think the court's categorical denial that a
lawyer was available, without making any inquiry
on the point, together with the flat statement that no
continuance would be granted, deprived defendant of
his constitutional right to be represented by coun-
sel  *  *  *  .  *  *  *

"*Here, the attorney and defendant reached an im-
passe on a crucial issue: whether to call defendant's
chief alibi witness.* They deemed the difference so
fundamental that both advised the judge the attor-
ney should be relieved of the duty to represent de-
fendant. The deputy public defender told the judge
that he had learned of the circumstance 'within the
last hour.' Thus it is clear that defendant did not
contrive a reason for change of counsel in order to
get a continuance or, for that matter, to obtain a
different attorney.

"We believe the basic right to representation by counsel, made so clear by *Gideon* v. *Wainwright,* 372 U. S. 335, 344 [9 L Ed 2d 799, 805, 83 S Ct 792, 796, 93 ALR 2d 733], encompasses the right to the appointment of different counsel when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic. When this occurs, the defendant is entitled to a reasonable continuance in order to effectuate a change of attorneys and obtain the representation by counsel he is entitled to have under the Constitution. * * *

*"Quite aside from the question of representation by counsel, defendant was prejudiced in the presentation of his case by denial of a continuance for a reasonable time in which to organize the presentation of his defense."* (Emphasis added.)

While the California Supreme Court in *People* v *Williams,* 2 Cal 3d 894; 88 Cal Rptr 208; 471 P2d 1008 (1970), disapproved the *Moss* case insofar as it stated that the state was under a duty to give a defendant second counsel at state expense any time a disagreement arose between a defendant and his counsel, nevertheless as the prosecutor concedes in his brief:

"The case of *People* v *Williams,* 88 Cal Rptr 208 (1970) indicates that the defendant is entitled to a reasonable continuance to effectuate the substitution."

*Moss* has very similar facts to those present in this case. Both cases involve a request for a continuance because of a desire for different counsel. In both *Moss* and the instant case, the disagreement came over whether to call alibi witnesses. In both cases, the disagreement arose very near to trial time—in *Moss* an hour before trial, and in this case

a day before trial. In both cases no negligence on the part of the respective defendants was involved.

The United States Supreme Court in discussing the problem of continuances, stated in *Ungar* v *Sarafite,* 376 US 575, 589; 84 S Ct 841; 11 L Ed 2d 921 (1964):

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. *Avery* v *Alabama,* 308 U.S. 444 [60 S Ct 321; 84 L Ed 377 (1940)]. *Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.* *Chandler* v *Fretag,* 348 U.S. 3 [75 S Ct 1; 99 L Ed 3 (1954)]. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. *The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Nilva* v *United States,* 352 U.S. 385 [77 S Ct 431; 1 L Ed 2d 415 (1957)]." (Emphasis added.)

The rule of the *Ungar* case is applicable to the instant case. The defendant requested a continuance in this case to obtain a new lawyer. The right to assistance of counsel is a precious constitutional right. It is probably the most important right of any defendant in a criminal trial. Without needlessly prolonging this opinion by citation of authority, we might point out that the importance of this right in our legal system is thoroughly analyzed by the United States Supreme Court in *Powell* v *Alabama,* 287 US 45; 53 S Ct 55; 77 L Ed 158; 84 ALR 527 (1932), and *Gideon* v *Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799; 93 ALR2d 733 (1963).

It is guaranteed by the United States Constitution[4] and has been included in every Constitution of this state since Michigan entered the Union.[5] This right has been jealously protected by the courts and is of critical importance to any defendant in a criminal trial. Hence, whenever this right is asserted, the trial court must take special care to insure that it is protected.

The reason that defendant wished to have new counsel was because of an irreconcilable difference of opinion with his counsel on whether to call certain alibi witnesses. This was a *bona fide* dispute and not a delaying tactic. The disagreement had only occurred the day before trial and thus defendant was not guilty of negligence in informing the court of his desire for different counsel.

The prosecution contends that one reason the trial court denied defendant's motion was that the court dockets were heavily burdened due to the July 1967 Detroit riot, and that the courts were attempting to clear up the dockets and avoid unnecessary delays. We agree that the courts must do everything necessary to avoid delay. But, this cannot include interfering with a defendant's right to a fair trial. As the United States Supreme Court stated in *Powell* v *Alabama, supra,* p 59:

"The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious

---

[4] The US Const, Am VI provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

[5] Const 1835, art 1, § 10; Const 1850, art 6, § 28; Const 1908, art 2, § 19; Const 1963, art 1, § 20.

crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob."

Thus, the desire of the trial courts to expedite court dockets is not a sufficient reason to deny an otherwise proper request for a continuance.

The trial judge indicated that the case had been delayed on several previous occasions and that she desired to avoid further delay. If this in fact were true, and if the delay had been at defendant's insistence, then this would be an important factor to consider in determining whether to grant a continuance. But, the record does not substantiate the trial court's comment in this regard.[6] The docket journal shows that this cause was adjourned on two separate occasions with no reason given in either instance. The second adjournment occurred after defendant filed a motion to quash the information and it appears that the court denied the motion and set the trial date of November 8, 1967, at that time. Hence, we have an adjournment and no evidence that it was at defendant's request. The court further stated that it felt this was merely a delaying tactic and that it was concerned about the witnesses who were present for trial. Both of these matters are, of course, legitimate factors to consider in ruling on defendant's motion. However, there is no evidence in the record before us that this was a delaying tactic, and a great deal of evidence that it was not for purposes of delay.

---

[6] *"The Court:* I am concerned, Mr. Monash, because this case has been up; this is about the fourth time. * * *

"This matter has been adjourned over and over again for one reason or another. Mr. Williams has had sufficient time if he wished to retain someone else. The Court feels that this is a delaying tactic and nothing more."

In view of the facts that: 1) defendant was asserting a constitutional right—the right to counsel; 2) he had a legitimate reason for asserting this right—an irreconcilable *bona fide* dispute with his attorney over whether to call his alibi witnesses; 3) he was not guilty of negligence; and 4) the trial court was incorrect in stating that defendant had caused the trial to be adjourned several times—we hold that the trial court abused its discretion in denying defendant's counsel's motion to withdraw and in preventing defendant from changing attorneys and granting a continuance in this case.

Reversed and remanded for new trial.

T. M. Kavanagh, C. J., and T. E. Brennan, T. G. Kavanagh, and Williams, JJ., concurred with Swainson, J.

Black, J. (*dissenting*). Division 1 concluded (26 Mich App 46, 51):

"The only issue presented is whether the trial court committed reversible error in denying defense counsel's motion to withdraw, and in failing to grant a continuance. 'It is well accepted in this State that the granting of a continuance rests with the sound discretion of the trial court.' *McKay* v *Black* (1967), 5 Mich App 711, 713, 714. See also, Annotation, 66 ALR2d 298. On the record presented in this case, we find no abuse of discretion. There had been numerous prior delays in bringing this matter to trial. Moreover, a defendant is not entitled to substitute counsel indefinitely and thereby continue to thwart the fair administration of justice. *People* v *Fleisher* (1948), 322 Mich 474. The record reveals that defendant was ably represented at trial and was

not prejudiced by the trial court's denial of the motion."

I agree and therefore vote to affirm.

ADAMS, J., concurred with BLACK, J.