PEOPLE v DUMONT

Docket No. 43728. Submitted February 21, 1980, at Detroit.—Decided
April 22, 1980.

Daniel E. Dumont was found guilty of malicious destruction of
property and resisting and obstructing a police officer, but
mentally ill, St. Clair Circuit Court, Halford I. Streeter, J.
Defendant appeals, claiming that the trial judge should have
appointed a neurological expert, as requested by the defendant.
*Held:*

1. A defendant's request for a neurological expert after a
routine competency report was filed should have been granted
where his history showed that he had previously been a mental
patient and that previous neurological examinations had been
performed and revealed abnormality and severe brain damage
and that his behavior in jail while awaiting trial was bizarre
and irrational, resulting in his transfer to a state mental
facility.

2. A legislative intent in enacting the statute which provides
that a defendant may, at his own expense, or if indigent, at the
expense of the county, secure an independent psychiatric evalu-
ation on the issue of his insanity at the time the alleged offense
was committed was to allow an indigent defendant an opportu-
nity to prepare an insanity defense at public expense by the
appointment of an expert chosen by the defendant.

Reversed and remanded.

1. CRIMINAL LAW — NEUROLOGICAL EXAMINATIONS — MENTAL PA-
TIENTS — BRAIN DAMAGE.

A defendant's request for the appointment of a neurological
expert should have been granted where his history showed that
he had been a mental patient on several occasions and that
previous neurological examinations had been performed and
revealed abnormality and severe brain damage.

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 21 Am Jur 2d, Criminal Law § 48.

Right of indigent defendant in criminal case to aid of state by
appointment of investigator or expert. 34 ALR3d 1256.

2. CRIMINAL LAW — INDIGENT DEFENDANTS — DEFENSES — INSANITY
    — EXPERT WITNESSES — LEGISLATIVE INTENT — STATUTES.

    A legislative intent in enacting the statute which provides that a
    defendant may, at his own expense, or if indigent, at the
    expense of the county, secure an independent psychiatric evalu-
    ation by a clinician of his choice on the issue of his insanity at
    the time the alleged offense was committed, was to allow an
    indigent defendant the opportunity to prepare an insanity
    defense at public expense by the appointment of an expert
    chosen by the defendant, who may testify as to the underlying
    medical basis for the defense (MCL 768.20a[3]; MSA
    28.1043[1][3]).

3. CRIMINAL LAW — NEUROLOGISTS — BRAIN DAMAGE — INSANITY —
    DEFENSES — DISCRETION — ABUSE OF DISCRETION.

    Failure to grant a defendant's request for the appointment of a
    neurologist by a trial judge who was clearly informed of the
    defendant's past history of brain abnormalities and of prior
    testing revealing them amounted to an abuse of discretion.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter E. Deegan,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

*Gail Rodwan,* Assistant State Appellate Defender, for defendant on appeal.

Before: BASHARA, P.J., and D. F. WALSH and T. M. BURNS, JJ.

BASHARA, P.J. Defendant was found guilty by a jury of malicious destruction of property, MCL 750.377b; MSA 28.609(2), and resisting and obstructing a police officer, MCL 750.479; MSA 28.747, but mentally ill, MCL 768.36; MSA 28.1059.

Several issues are raised on appeal, however, we need address only the question of whether the trial judge should have appointed a neurological

expert as requested by the defendant. The answer is in the affirmative.

Relevant facts reveal that on the evening of March 27, 1978, defendant appeared at the emergency room of the Port Huron Hospital suffering from an apparent drug overdose. While nurses were discussing the problem with a doctor, the defendant ran from the hospital yelling that he did not want to undergo treatment.

Shortly thereafter, a girl who had accompanied defendant to the hospital rushed back into the emergency room screaming that the defendant was in the parking lot and was attempting to wreck a police car. Police and hospital officers found defendant striking the auto with a flashlight. An altercation occurred in an attempt to subdue the defendant and one of the officers was injured. The defendant was subsequently restrained. The charges against the defendant grew out of the foregoing facts.

The trial of this matter commenced on December 5, 1978. In the interim, defendant was incarcerated in the St. Clair County Jail. His behavior at the jail was bizarre and irrational. On three separate occasions, the sheriff's office requested that defendant be transferred to Clinton Valley Hospital, a state mental facility, because of his self-mutilating and irrational behavior. On all three occasions he escaped from the mental health facility and was returned to jail. During his incarceration, he did such things as swallow a razor blade given him for shaving, bang his head and fists against the jail walls and bars, cut himself and acted in a generally irrational and incoherent manner.

On October 5, 1978, after a routine competency report was filed, defense counsel moved to have a

neurologist appointed to perform a neurological examination on defendant. Defendant's history showed that he had been a mental patient on several occasions commencing with 1974. Neurological examinations had previously been performed revealing abnormality and severe brain damage.

At the hearing on the motion, the trial judge refused to appoint a neurological expert because he felt he was not required to have any organic analysis performed.

MCL 768.20a(3); MSA 28.1043(1)(3) provides:

"(3) The defendant may, at his own expense, or if indigent, at the expense of the county, secure an independent psychiatric evaluation by a clinician of his choice on the issue of his insanity at the time the alleged offense was committed. The defendant shall notify the prosecuting attorney at least 5 days before the day scheduled for the independent evaluation that he intends to secure such an evaluation. The prosecuting attorney may similarly obtain independent psychiatric evaluation. A clinician secured by an indigent defendant shall be entitled to receive a reasonable fee as approved by the court."

The issue is whether the neurological examination sought falls within the scope of an "independent psychiatric evaluation by a clinician of his choice on the issue of insanity at the time the alleged offense was committed". A search of Michigan law reveals no precedent on which to rely for guidance. However, an analysis of the statute itself may provide the clues to determine legislative intent.

Stedmen's Medical Dictionary defines "clinician" as a "physician engaged in clinical practice as distinguished from investigator or teacher working in preclinical fields". The same authority states

that "psychiatric" is the "recognition and treatment of diseases of emotions and the mind," while a "neurologist" is "one versed in the science of neurology; a specialist in the treatment of nervous diseases".

The obvious legislative purpose in enacting the statute in question is to allow an indigent defendant the opportunity to prepare an insanity defense at public expense by the appointment of an expert, chosen by the defendant, who may testify as to the underlying medical basis for the defense.

While no Michigan cases appear to assist us, a pronouncement by the Illinois Supreme Court is most helpful. In *People v Watson,* 36 Ill 2d 228, 232-233; 221 NE2d 645 (1966), the Supreme Court of Illinois concerned itself with the production of an expert in a check forgery case. The Court there stated:

"It has long been a major goal of our entire judicial system to see that all persons charged with a crime 'stand on an equality before the bar of justice in every American court.' *(Chambers v State of Florida,* 309 US 227, 241, [60 S Ct 472, 479] 84 L Ed 716, 724 [1940].) Such cases as *Gideon v Wainwright,* 372 US 335, 9 L Ed 2d 799, 83 S Ct 792 [1963], and *Griffin v Illinois,* 351 US 12, 100 L Ed 891, 76 S Ct 585 [1956] have gone far to achieve this goal by assuring indigent defendants, even in noncapital cases, the right to counsel and to appellate review. The problem now facing the court concerns the production of witnesses on behalf of indigents. The Illinois constitution provides, in section 9 of article II, that in criminal prosecutions the accused is entitled to have process to compel the attendance of witnesses in his behalf. In almost identical language the sixth amendment to the United States constitution provides that the accused in criminal cases is entitled to have compulsory process for obtaining witnesses in his favor. Thus it is at once apparent that the right to summon witnesses is fundamental in our legal system. It is defendant's contention that a right so fundamental

should not be made to depend upon the financial circumstances of the defendant. We share this view.

"The court recognizes that there is a distinction between the right to call witnesses and the right to have these witnesses paid for by the government, but in certain instances involving indigents, the lack of funds with which to pay for the witness will often preclude him from calling that witness and occasionally prevent him from offering a defense. Thus, although the defendant is afforded the shadow of the right to call witnesses, he is deprived of the substance.

"The value of an expert witness's testimony lies in his experience and, more particularly, in his preparation." 36 Ill 2d 228, 232-233; 221 NE2d 645, 648 (1966).

It is the Court's conclusion that the legislative intent in enacting the statue allows the appointment and assistance of an appropriate expert to examine the defendant and testify as to the underlying medical basis for an insanity defense. Given the facts of the case at bar, the defendant had the right to the appointment of a neurologist. The court's failure to do so constitutes reversible error.

We do not ignore the prosecutor's admonition that the decision of whether to grant or deny defendant's request for the appointment of a neurologist was within the sound discretion of the trial judge. *People v Williams,* 386 Mich 565; 194 NW2d 337 (1972). However, we have carefully reviewed the transcript of the October 30, 1978, hearing on the motion for appointment of a neurologist. The trial judge was clearly informed of the defendant's past history of brain abnormalities and of prior testing revealing them. The failure to appoint a neurologist under those circumstances amounted to the abuse of discretion contemplated in *People v Williams, supra.*

Reversed and remanded for proceedings consistent with this opinion.