978 F.2d 1261
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Max GARTNER, Petitioner-Appellant,
v.
Stephen L. MCEVERS, Warden, Logan Correctional Center and
Michael P. Lane, Director of the Department of
Corrections, Respondents-Appellees.
 No. 90-3853.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 21, 1992.*
Decided Oct. 23, 1992.
 
 Before BAUER, Chief Judge, CUMMINGS, Circuit Judge and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Max Gartner appeals from denial of his petition for a writ of habeas corpus made under 28 U.S.C. § 2254. We affirm for the reasons stated in the attached order of the district court.
 
 
 2
 Gartner makes two additional claims for the first time on appeal: (1) the state trial judge was biased and (2) his waiver of his right to assistance of counsel was not knowing and intelligent. In addition to lacking support in the record, these arguments were raised for the first time in Gartner's reply brief, and thus they are waived. Wilson v. O'Leary, 895 F.2d 378, 384 (7th Cir.1990). Moreover, Gartner failed to raise them in his habeas petition, so they are waived for that reason as well. Smith v. Fairman, 862 F.2d 630, 634-35 (7th Cir.1988), cert. denied, 490 U.S. 1008 (1989).
 
 
 3
 AFFIRMED.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 
 4
 CENTRAL DISTRICT OF ILLINOIS--SPRINGFIELD DIVISION
 
 
 5
 UNITED STATES OF AMERICA ex rel. MAX GARTNER, Petitioner,
 
 
 6
 v.
 
 
 7
 STEPHEN L. McEVERS, et al., Respondents.
 
 No. 90-3083
 Nov. 8, 1990
 ORDER
 RICHARD MILLS, District Judge:
 
 8
 This cause is before the Court on Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The sole ground raised by Petitioner in his petition is that he was denied his sixth amendment right to counsel when he "justifiably discharged" his retained attorney but the court refused his request for a continuance to retain new counsel, forcing Petitioner to represent himself.
 
 
 9
 On July 10, 1986, Petitioner was charged by indictment with the offenses of home invasion, armed violence, residential burglary, aggravated kidnapping, aggravated battery, and aggravated unlawful restraint. On January 28, 1987, a jury sitting in the Circuit Court of McLean County returned guilty verdicts on the offenses of armed violence, residential burglary, and aggravated unlawful restraint. On August 4, 1987, Petitioner was sentenced to concurrent terms in the Illinois Department of Corrections of 15 years on the armed violence conviction, 4 years on the residential burglary conviction, and 5 years on the unlawful restraint conviction. On December 22, 1988, the Illinois Appellate Court, Fourth District, in an unpublished order, affirmed Petitioner's convictions. On April 5, 1989, the Illinois Supreme Court denied Petitioner's petition for leave to appeal.
 
 
 10
 The state's evidence established at trial that in the early morning hours of June 14, 1986, Richard and Linda Gartner, Petitioner's brother and sister-in-law, were awakened by Petitioner. Petitioner had a .177 caliber pellet gun in one hand and handcuffs and duct tape in the other. Petitioner ordered Richard and Linda to be quiet, or he would shoot them. Petitioner had Linda handcuff Richard's hands behind his back and place duct tape over his eyes and mouth. Linda then asked Petitioner not to hurt her children, and Petitioner struck her in the head with a wooden hammer handle. Petitioner then handcuffed Linda and put tape over her mouth.
 
 
 11
 Petitioner then led his victims to another room. Richard knocked the gun from Petitioner's hands, and Linda escaped to the neighbors, calling the police. A long struggle ensued between Petitioner and Richard. At one point during the struggle, Petitioner struck Richard in the head with a chair, causing injuries to Richard's head. Finally, Richard freed a hand and subdued Petitioner, tying his legs with an extension cord, handcuffing his hands, and leaving him lying on the floor for police.
 
 
 12
 Upon arrival, the police found a .25 caliber automatic pistol within 1 to 3 feet of where Petitioner was lying. A loaded .25 caliber clip was found nearby, and .25 caliber ammunition was found on Petitioner. Also found on Petitioner was an envelope with a note indicating that if they wanted to see their people alive again, Petitioner's ex-wife would return property she received in their divorce, and Petitioner would receive immunity from prosecution.
 
 
 13
 At trial, Petitioner presented a defense of insanity. His witnesses, which included his parents, portrayed Petitioner as a hardworking businessman who owned several farms and other businesses prior to his divorce. Petitioner was characterized as a loving and caring father to his two daughters. Following the divorce in 1983, in which Petitioner's ex-wife received custody of the children, a change came over Petitioner. He lost all ambition, did not take care of his businesses, and became depressed. Finally, in 1985, Petitioner took his daughters to Canada. The person left in charge of Petitioner's businesses found them in a financial shambles because Petitioner had neglected the land, failed to cash checks, and failed to pay taxes.
 
 
 14
 Petitioner testified that in 1985 he took his children to Canada because his ex-wife could not take care of them. Eventually, the authorities located him and returned the children. Petitioner then fled to Puerto Rico where he lived in a hotel and tried to figure out how to get his children back. Petitioner concluded his brother could help because he was friendly with his ex-wife. Petitioner stated that he did not plan for anyone to get hurt when he went over to the house. Petitioner was acting irrationally, and testified that it did not enter his mind that he was violating the law. Petitioner stated that the reason he had the .25 caliber handgun was to either shoot himself or to make the police shoot him if things went wrong.
 
 
 15
 Petitioner's petition is based upon the denial of his sixth amendment right to counsel by the trial court's failure to grant a continuance. Therefore, the procedural history of this case is highly relevant.
 
 
 16
 As previously mentioned, Petitioner was indicted on July 10, 1986. On July 22, Hal Jennings, a privately retained attorney, filed an appearance on Petitioner's behalf. Trial was originally scheduled before Judge Knecht on August 13, 1986. On that date, Mr. Jennings moved for a two-day continuance which was allowed.
 
 
 17
 On August 15, Mr. Jennings once again appeared and filed a written motion for continuance which was allowed. Petitioner's trial was reset for October 6. On October 1, Mr. Jennings appeared and moved to continue for the purpose of allowing Petitioner to undergo psychological testing. This motion was also allowed and the cause was to be reset for trial at a later date.
 
 
 18
 On November 26, Mr. Jennings appeared and moved for a substitution of judge. This motion was allowed and the case was transferred to Judge Campbell.
 
 
 19
 On January 5, 1987, Petitioner once again moved for a continuance from that date until January 21. This motion was allowed. On January 20, Petitioner appeared in the company of Lars Ostling, an associate of Mr. Jennings, for the purpose of tendering a plea of guilty. Pursuant to the prearranged plea agreement, Petitioner would plead guilty to the charges of armed violence and aggravated kidnapping along with two other unrelated charges from another county.
 
 
 20
 During the course of the court's admonitions, the State's Attorney interrupted and informed the court that the record should reflect that Petitioner was tendering a plea of "guilty but mentally ill." The court then asked Petitioner whether that was true, and whether it had been explained to him that a guilty but mentally ill plea subjected him to the same possible sentences as a straight guilty plea. Petitioner indicated that it had not been explained to him that he could still receive the same sentence under a plea of guilty but mentally ill as he could under a straight guilty plea.
 
 
 21
 As the court continued its admonitions, Petitioner interrupted and stated "well, Judge, what I would like to do is, I don't feel my attorney has taken care of me, and I want to fire my attorney and if I have to I'll handle it on my own." The proceedings were adjourned for that day and reset for trial the following day.
 
 
 22
 On January 21, Petitioner appeared in the company of Mr. Jennings. At that time, Petitioner stated that he did not want to be represented by Mr. Jennings. The court then stated:
 
 
 23
 What are you going to do? You have a right to represent yourself, there's no question about that. This case is set for trial. It must be tried in order to give you a trial within the limits of the law. It will be tried this week. Now you can proceed with or without counsel, if that is your decision. If you have your counsel get out of the case at this late date there is nothing I can do about it. It is a decision you're going to make all by yourself.
 
 
 24
 Petitioner then indicated that he wished to represent himself. At that point, the court appointed the public defender as standby counsel. Petitioner then moved for a continuance so he could retain other counsel. Petitioner's motion was denied. Thereafter, Petitioner approached the bench once again and requested a continuance. This request was also denied. The public defender then stated that Petitioner was requesting the appointment of counsel. The court, at that point, appointed the public defender to represent Petitioner and denied the public defender's motion for continuance.
 
 
 25
 The public defender then informed the court that a question existed regarding Petitioner's fitness to stand trial. The court immediately convened a hearing and found that no bona fide doubt existed as to Petitioner's fitness to stand trial. The proceedings were recessed until the following day.
 
 
 26
 The following morning, Petitioner indicated that he had contacted an attorney from Chicago who had agreed to represent him and thus requested a continuance to allow that attorney to enter his appearance. The court denied this motion for continuance as well. At that point, the public defender moved to withdraw based upon Petitioner's assertion that he did not want the public defender to represent him. The court allowed the public defender's motion to withdraw and reappointed him as standby counsel.
 
 
 27
 As the jurors were brought into the courtroom, Petitioner once again approached the bench and moved for a continuance. The court denied this motion. A jury was selected and the case was recessed until the following day. The following day, Petitioner moved for a continuance once again which was also denied. The Petitioner then moved for a mistrial. This motion was denied. Petitioner then proceeded to represent himself at trial.
 
 
 28
 The appellate court, in ruling upon Petitioner's argument that he had been denied counsel, stated that the trial court did not abuse its discretion in denying Petitioner's repeated motions for continuance. Continuing, the appellate court indicated that if the attorney from Chicago had been present and ready, willing and able to enter his appearance, it would have constituted an abuse of discretion to deny a motion for continuance to allow that attorney time to prepare. However, because no attorney was present and ready, willing and able to enter his appearance, the denials of Petitioner's motions to continue were not an abuse of discretion. Petitioner now brings this same argument before our Court.
 
 
 29
 The sixth amendment right to counsel affords a defendant a "fair opportunity to secure counsel of his own choice." Powell v. Alabama, 287 U.S. 45, 53 (1932). But the "exercise of that right must at times give way to the need for a fair and efficient administration of justice." United States ex rel. Kleba v. McGinnis, 796 F.2d 947, 952 (7th Cir.1986). Indeed, "[t]he sixth amendment does not give an accused the power to manipulate his choice of counsel to delay the orderly progress of his case." Id. (citing United States ex rel. Spurlark v. Wolff, 683 F.2d 216, 220 (7th Cir.1982), rev'd in part on other grounds, 699 F.2d 354 (7th Cir.1983) (en banc)).
 
 The Supreme Court has stated:
 
 30
 The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrarywise, a myopic insistance upon expeditionness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.
 
 
 31
 Ungar v. Sarafite, 376 U.S. 575, 589 (1964) (citations omitted); see also Morris v. Slappy, 461 U.S. 1 (1983).
 
 
 32
 In the case at bar, Petitioner's petition for a writ of habeas corpus generously characterizes the issue as whether he was "denied his sixth amendment right to counsel where he justifiably discharged his retained attorney but the court would not allow Mr. Gartner's continuance in order to retain new counsel, thus forcing the defendant to represent himself...." The appellate court found, and the record adequately supports, the trial court's conclusion that Petitioner's discharge of his retained attorney was not justifiable but was merely for the purpose of obtaining further delay. The written plea agreement between Petitioner and the state specifically stated that "defendant may receive any sentence allowable at law to the crimes to which defendant pleads guilty; however, all sentences shall be concurrent." This plea agreement belies Petitioner's assertion that he was unaware that he was subject to incarceration in the Department of Corrections following a plea of guilty but mentally ill.
 
 
 33
 In addition, the record reveals that Petitioner received three continuances and a substitution of judge upon the request of his counsel. The state was under an obligation to bring Petitioner to trial within 120 days. Ill.Rev.Stat. ch. 38, p 103-5(a). Although Petitioner states in his brief that this rule is waivable, neither he nor the public defender ever stated that they were willing to waive this rule in exchange for a continuance.
 
 
 34
 Plaintiff cites two cases in support of his argument that the trial court's actions violated his right to counsel. See People v. Williams, 386 Mich. 565, 194 N.W.2d 337 (1972); People v. Moss, 253 Cal.App.2d 248, 61 Cal.Rptr. 107 (1967). However, in both of these cases the defendant and his attorney reached an impasse at the last minute as to whether certain alibi witnesses should be called. That situation is distinguishable from the case at bar where Plaintiff unilaterally discharged his attorney and then tried everything he could to obtain a continuance.
 
 
 35
 The record adequately supports the trial court's conclusion that Petitioner was engaged in nothing more than a feverish scramble to obtain a last minute continuance. Therefore, we conclude that no violation of Petitioner's constitutional rights occurred.
 
 
 36
 Ergo, Petitioner's petition for a writ of habeas corpus (d/e 1) is DENIED.
 
 
 37
 Case CLOSED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record