*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JACKIE LOUISE FARLEY,

Defendant-Appellant.

UNPUBLISHED
December 22, 2020

No. 349058
Ionia Circuit Court
LC No. 2018-017649-FH

Before: RONAYNE KRAUSE, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Defendant, Jackie Louise Farley, appeals as of right her jury trial conviction of larceny in a building, MCL 750.360. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to six months' incarceration. On appeal, defendant argues the trial court violated her right to a fair trial and competent legal representation when it denied her motion to substitute appointed counsel. Defendant presents no other substantive challenges to her conviction or sentence. We affirm.

## I. BACKGROUND

Defendant was arrested and charged with larceny in a building after video evidence showed her to have stolen a purse left by a customer at the laundromat where defendant worked. Defendant filed a request for court-appointed counsel on November 20, 2018. She then appeared at two arraignment hearings. At the first hearing, held on January 15, 2019, her appointed defense counsel, Larry Lewis, orally requested a competency evaluation for defendant. Lewis also informed the court that defendant requested an adjournment and an opportunity to retain outside counsel. After questioning from the trial court, defendant stated that she would have enough money to pay for a retained attorney by the end of that week. The trial court adjourned the hearing, stating:

> Mrs. Farley, I'll adjourn this two weeks, but I expect when we come back in two weeks, you're gonna (sic) have your attorney with you. This won't be adjourned again. I'll see you for arraignment on January—what's the date today—the 29th, January 29th. Your bond will continue.

-1-

The trial court did not make a ruling on the request for a competency evaluation at that time, nor did counsel pursue the matter. No written motion for a competency evaluation appears to have ever been filed.

When defendant appeared at the second arraignment as scheduled, she had not retained counsel and now sought to represent herself. The trial court told her that she would be "held to the same standard" and "that could be very detrimental to you." Defendant responded by informing the trial court:

> *The Defendant*: I forgot last time to tell you that there's a personal conflict between Walter Downes and my husband, which could have—reflect on me, from a previous case, and I forgot to ask for another court-appointed attorney—
>
> *The Court*: Okay.
>
> *The* [*Defendant*]: —outside of Walter Downes' office.

Defendant stated that Walter Downes[1] was involved in a case against her husband "a couple of years ago." She could not recall when the previous case occurred or whether it was a civil or criminal case, nor did she provide any details beyond "somebody was falsely accusing [her] husband."

Defendant stated that she wanted "to get another court appointed attorney outside the public defender's office because that's under Walter Downes." The trial court expressed doubt that any attorneys were available outside the public defender's office, whereupon defendant stated that she would "have to do it [her]self." She also complained that her appointed counsel was not helping her, and "instead he wants to try to get me to get a mental evaluation so I can't stand up in court." She did not provide a coherent explanation of what that meant, but she explained that she had tried to address the issue with Lewis, but regarded his inquiries as "interrogating" to the point where she "was shaking and almost crying by the time [she] left his office," and that "he knows that I crack, and everything else, with my borderline personality disorder." She reiterated to the trial court that she "crack[s] very easy." The trial court confirmed with Lewis that Lewis's office found no apparent conflict, and noted that he had "orders prepared for competency and responsibility exam for her due to her comments." The trial court stated that it would not "attorney shop for [her]," and explained that she could either continue with her appointed counsel or represent herself. Defendant elected to represent herself.

The trial court then asked her if she recognized that she "could be at a substantial—and I don't use the word substantial lightly—a substantial disadvantage by going it alone?" Defendant agreed that she understood that she could be at a substantial disadvantage, that she understood she would be held to the same standard as an attorney, and that she nevertheless wished to represent herself. The trial court offered to keep Lewis available as standby counsel, which defendant accepted. The trial court then proceeded with the arraignment and, in response to defendant's

---

[1] Walter Downes is the Chief Public Defender for the Ionia County Public Defender Office. See < https://ioniacounty.org/departments-officials/public-defender-office/ >.

statements, entered a not guilty plea on her behalf. At the conclusion of the arraignment, Lewis reiterated the request for a competency and criminal responsibility examination based on her comments about her psychiatric issues. The trial court asked defendant whether she wished to submit to that request, which she declined. The trial court then told Lewis it was declining his request because defendant was representing herself at that time.

Defendant, in propria persona, filed a motion to suppress what she described as a "confession, under duress." She cited her borderline personality disorder and PTSD as a reason why, in response to an inquiry from a police officer into the purse, she "falsely confessed under the guise [sic] that she felt hopeless in her mind in that she would be found guilty at this point regardless." She further explained that her conditions "make her potentially unstable under pressure and susceptible to cracking." The trial court held a hearing on that motion, in which defendant stated that Lewis had "refused to even put the motion in." The trial court reiterated that "as far as the Court can tell, all you're doing is making your situation worse because you're not listening to anybody that knows something about how all of this works" and it reminded her that Lewis was an attorney, and she was not. Defendant reiterated her belief that if she was found not competent, she would not "be able to talk at trial." She confirmed to the trial court that she wanted to continue to represent herself. The trial court confirmed that defendant's argument was "simply because you may have a diagnosis, then that then leads somebody to falsely confess." The trial court declined to accept that proposition and denied defendant's motion. Thereafter, the trial court stated,

> So, we are scheduled for trial tomorrow. Ms. Farley, I'm – can't counsel you strongly enough that you have a constitutional right to represent yourself, and you certainly can do this tomorrow, but this is just not going well. And because you refuse to listen to anybody with some knowledge about this, it just is, like, watching somebody continue to dig the hole deeper.

It reiterated that Lewis would be kept on standby and could represent her at trial. Defendant nevertheless persisted that she wanted to continue representing herself.

At the beginning of trial, the trial court asked defendant if she still wished to continue to represent herself. Defendant replied, "I feel like I don't have a choice in the matter." The trial court told her that she had not answered its question, and it pointed out that Lewis was present. It again asked whether she wanted to represent herself, to which she replied, "yes." The trial court also explained that she had a right to appointed counsel, which defendant acknowledged. The trial court also explained that she would be held to the same standard as an attorney, and it would enforce the court rules, whether defendant understood them or not. Defendant again acknowledged. The trial court explained that although she could ask Lewis questions, she would nevertheless be representing herself, and it reiterated that she would not be given any special treatment. The trial court also reminded her that the prosecutor was experienced, and she would be at an inherent disadvantage. Defendant sought permission to consult with Lewis, which was granted, and after which she reiterated that she still wished to represent herself, and there was no question in her mind about that wish. The trial court nevertheless kept Lewis present as backup counsel.

The trial court found that defendant's intention to represent herself had been unequivocal, knowing, intelligent, and voluntary; and that it was "confident that [she was] aware of the dangerous [sic] and disadvantages of self-representation." It further found that her self-representation would not disrupt the proceedings. After a one-day trial, the jury found defendant guilty of larceny in a building. Defendant now appeals.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision denying substitution of counsel. *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). We review for clear error a trial court's factual findings regarding a defendant's waiver of counsel, and we review de novo any underlying questions of law. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). Parties appearing in propria persona are not excused from providing support for their claims, but they are entitled to more generosity and lenity in construing their pleadings than would be lawyers. *Estelle v Gamble*, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976).

## III. ANALYSIS

Defendant argues that the trial court violated her right to a fair trial and competent legal representation when it denied her motion for substitute counsel. We disagree.

The Sixth Amendment of the United States Constitution guarantees a criminal defendant's right to counsel. US Const, Am VI; *People v Russell*, 471 Mich at 187. However, in *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991) (citations omitted), this Court explained the limits on a defendant's right to substitute appointed counsel:

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic.

In this case, the trial court did not abuse its discretion by denying defendant's request for substitute counsel. See *Mack*, 190 Mich App at 14. Defendant did not show good cause. The record suggests that the Ionia County Public Defender Office researched defendant's claim of a conflict of interest and determined that there was no conflict. The record also reflects that the trial court asked defendant about the nature of the alleged conflict. In response, defendant was only able to provide a vague explanation that the Chief Public Defender—not actually her appointed counsel—had represented an opposing party in some other lawsuit against her husband at some unspecified time in the past. Defendant relies on Michigan Rule of Professional Conduct (MRPC) 1.7(b), but that rule is inapplicable because it only governs conflicts of interest between *current* clients. We do not find any clear error in the trial court's conclusion that there was no conflict

involving her appointed counsel, or that any possible conflict involving Downes would affect Lewis's representation in this matter.

To the extent that defendant inadequately represented herself at trial, defendant admits that the competence of counsel is not relevant to whether the trial court should have appointed substitute counsel. Defendant refused a competency exam despite her reliance upon her supposed psychiatric diagnoses, and she repeatedly insisted that she was capable of representing herself despite professing to "crack" easily. If defendant lacked meaningful representation at trial, it was defendant's actions that put her in that situation.

Defendant argues that she should have received substitute counsel because of an irreconcilable breakdown in the attorney-client relationship. We disagree. As discussed, the alleged conflict was essentially nonexistent. Otherwise, defendant objected to Lewis not filing her motion to suppress based on her psychiatric diagnoses and seeking a competency exam. However, a criminal defendant does not have a right to micromanage how counsel goes about representing her. See *People v LaMarr*, 1 Mich App 389, 393; 136 NW2d 708 (1965). In particular, counsel cannot be faulted for declining to make a frivolous motion. See *People v Riley (After Remand)*, 468 Mich 135, 142; 659 NW2d 611 (2003). We agree with the trial court's conclusion that defendant's motion to suppress was not "even a close call." Similarly, given defendant's reliance on her alleged incapacities as a result of her psychiatric diagnoses, it would seem completely reasonable to pursue a competency examination. Only a *legitimate* difference of opinion regarding a fundamental trial tactic will constitute good cause for substitution of counsel. *Mack*, 190 Mich App at 14.

Defendant relies on *People v Williams*, 386 Mich 565, 576-577; 194 NW2d 337 (1972). In *Williams*, our Supreme Court held that a trial court abused its discretion when it denied the defendant's request for a continuance to obtain a new lawyer. *Id*. at 578. However, *Williams* is clearly distinguishable from this case. Specifically, the *Williams* Court explained:

> The reason that defendant wished to have new counsel was because of an irreconcilable difference of opinion with his counsel on whether to call certain alibi witnesses. This was a *bona fide* dispute and not a delaying tactic. The disagreement had only occurred the day before trial and thus defendant was not guilty of negligence in informing the court of his desire for different counsel. [*Id*. at 576.]

In this case, nearly the opposite occurred. Lewis and defendant both *agreed* that defendant had serious psychiatric diagnoses that caused her to have some kind of cognitive or emotional deficit, and they both sought to make use of those diagnoses to preclude some aspect of the prosecution's case. The difference was largely that Lewis had, as the trial court repeatedly tried to warn defendant, some apparent idea of what he was doing and how to make legally effective use of defendant's diagnoses. We find no abuse of discretion in the trial court's refusal to grant substitute counsel.

Finally, we observe that the trial court followed all of the proper procedures for defendant's waiver.

[A] trial court must make three findings before granting a defendant's waiver request. First, the waiver request must be unequivocal. Second, the trial court must be satisfied that the waiver is knowingly, intelligently, and voluntarily made. To this end, the trial court should inform the defendant of potential risks. Third, the trial court must be satisfied that the defendant will not disrupt, unduly inconvenience, and burden the court or the administration of court business. [*People v Williams*, 470 Mich 634, 642; 683 NW2d 597 (2004).]

The trial court clearly informed defendant of the dangers of self-representation and properly made the requisite findings. The trial court must also substantially comply with MCR 6.005(D). *Russell*, 471 Mich at 190-192. The trial court was required to

(1) advis[e] the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offer[] the defendant the opportunity to consult with a retained lawyer, or, if the defendant is indigent, the opportunity to consult with an appointed lawyer. [MCR 6.005(D).]

Again, the trial court clearly complied with the requirements of the court rule.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Stephen L. Borrello