# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

MICAH LYNN EVANS,

    Defendant-Appellant.

UNPUBLISHED
May 3, 2018

No. 335327
Isabella Circuit Court
LC No. 2015-001804-FH

Before: O'CONNELL, P.J., and BECKERING and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of one count each of third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(b), assault with intent to commit sexual penetration, MCL 750.520g(1), and domestic violence third offense, MCL 750.81(4).[1] Defendant's convictions arise out of an August 1, 2014, incident involving defendant's girlfriend sparked by a verbal altercation that led to defendant hitting the complainant in the back of the head, dragging her by her hair into the bathroom of the trailer where he lived, and ultimately sexually assaulting her. The trial court sentenced defendant as a fourth-habitual offender, MCL 769.12, to concurrent terms of 30 to 50 years for the CSC III conviction, 8 to 50 years for the assault conviction, and 5 to 50 years for the domestic violence conviction. We affirm.

## I. RIGHT TO COUNSEL OF CHOICE

Defendant first argues that the trial court violated both the Michigan and federal constitutions by depriving him of his right to counsel of his choice, resulting in structural error and requiring a new trial. Specifically, defendant contends that he was forced to fire his attorney in order to obtain a necessary adjournment, and that he did not want to fire his chosen attorney.

## A. STANDARDS OF REVIEW

---

[1] Defendant was acquitted of one count of interference with an electronic device, MCL 750.540(5)(a).

-1-

An issue is preserved for appeal when it was raised in the trial court. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). This issue is not preserved because it was not raised in the trial court. Unpreserved constitutional claims are reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 773, 597 NW2d 130 (1999).

> To avoid forfeiture of a nonpreserved constitutional error under the plain error rule, three requirements must be met: (1) error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. Even if a defendant satisfies these three requirements, reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings. [*People v Seals*, 285 Mich App 1, 4; 776 NW2d 314 (2009) (citations omitted)].

## B. ANALYSIS

In *United States v Gonzalez–Lopez*, 548 US 140, 146; 126 S Ct 2557; 165 L Ed 2d 409 (2006), the Court stated, "the Sixth Amendment right to counsel of choice . . . commands ... that the accused be defended by the counsel he believes to be best." However, this right is not absolute. *People v Krysztopaniec*, 170 Mich App 588, 598; 429 NW2d 828 (1988). "We have recognized a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *Gonzalez–Lopez*, 548 US at 151–152. "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *People v Williams*, 386 Mich 565, 575; 194 NW2d 337 (1972) (internal citation and emphasis omitted).

On April 22, 2016 the parties appeared before the trial court for a settlement conference. Defendant's counsel, Dwight Carpenter, discussed the fact that his client was seeking a second adjournment of the trial date. Carpenter offered two reasons for the request: 1) that he and defendant were having "some problems," and 2) that defendant was being released from prison the day before trial was to begin and needed time to participate in the preparation of his defense. Carpenter also mentioned that he had told defendant that the grant of a second adjournment with him as counsel was highly unlikely, and that firing him was a more likely route to obtain the additional time. Defendant agreed that he was having problems with Carpenter and that it was his desire to hire a new attorney. In fact, Carpenter had told the trial court three months prior at

the February 2016 settlement conference, when defendant sought and obtained his first adjournment, that defendant was contemplating hiring co-counsel or firing him.[2]

On appeal, defendant argues that he was forced to fire Carpenter in order to obtain an adjournment so that he could prepare his defense. Carpenter supports defendant and avers by affidavit to this Court that he requested an adjournment of the trial date due to a scheduling conflict, was denied, and that he informed defendant that the only way the trial court would grant another adjournment was if he fired him and hired new counsel. However, Carpenter's affidavit contradicts his statements on the record, as do defendant's arguments in this appeal. Furthermore, Carpenter's statements at the April 22, 2016 hearing appear to waive any prayer for an adjournment of the trial date with him remaining as counsel. To the extent the trial court purportedly indicated its intention to deny such a request, had it been presented on the record, we would not deem that decision to be an abuse of discretion.[3] Defendant has not established plain error under the circumstances.

## II. ADMISSION OF OTHER ACTS OF DOMESTIC VIOLENCE UNDER MCL 768.27

Defendant argues that he was denied the effective assistance of counsel due to his trial counsel's failure to object to the admission of other acts of domestic violence under MCL 768.27(b) and the trial court's failure to undertake an MRE 403 balancing analysis.

### A. STANDARDS OF REVIEW

The question whether a defense counsel has performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and de novo questions of constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). "In order to preserve the issue of effective assistance of counsel for appellate review, the defendant should make a motion in the trial court for a new trial or for an evidentiary hearing." *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Defendant took neither of these steps. "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). To the extent defendant takes issue with the trial court's decision to admit such evidence, defendant's evidentiary challenge is also unpreserved. We review an unpreserved evidentiary challenge for plain error affecting substantial rights. *Carines*, 460 Mich at 762-763.

### B. ANALYSIS

---

[2] At the time of his first request for an adjournment, Carpenter requested that trial be adjourned and scheduled to occur after May 4, 2016. The trial court granted defendant's request and rescheduled the trial to take place on May 5, 2016.

[3] Had defendant properly preserved the issue, this Court would review the trial court's decision to deny an adjournment for an abuse of discretion. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000).

To establish a claim of ineffective assistance, the defendant must show that "(1) counsel's performance was below an objective standard of reasonableness under professional norms and (2) there is a reasonable probability that, if not for counsel's errors, the result would have been different and the result that did occur was fundamentally unfair or unreliable." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). Counsel is presumed to be effective and this Court will not assess counsel's performance with the benefit of hindsight. *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). The defendant must also "overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

MCL 768.27b provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403." MCL 768.27b(1). Under MCL 768.27b, an individual commits domestic violence when he or she causes physical harm to another "individual with whom the person has or has had a dating relationship." MCL 768.27b(5)(a)(*i*) and (5)(b)(*iv*). Under the statute, evidence of prior domestic violence is admissible at trial "to show a defendant's character or propensity to commit the same act," *People v Railer*, 288 Mich App 213, 219-220; 792 NW2d 776 (2010), "as long as the evidence satisfies the 'more probative than prejudicial' balancing test of MRE 403[.]" *People v Cameron*, 291 Mich App 599, 610; 806 NW2d 371 (2011). MRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

At trial, plaintiff introduced evidence of defendant's 2008, 2011 and 2012 prior convictions for domestic violence. Defendant's position at trial was that the incidents alleged by the complainant simply did not happen. The prior convictions were for acts not substantially dissimilar to the conduct alleged in this case. Per the complainant's testimony, in 2011, defendant threw a glass of water in her face, dragged her by her hair, and shot a gun into the air, feigning suicide, after he saw the complainant's ex-husband at her work. In 2012, after a verbal altercation, he repeatedly spit on the complainant's face and wrestled her to the ground. In the instant offense, he dragged the complainant by her hair and sexually assaulted her in the bathroom while her daughter was outside the bathroom. Defendant argues that his trial counsel was ineffective for not objecting to the plaintiff's notice of intent to introduce this information and to the complainant's testimony regarding other acts of domestic violence. We disagree. These objections would have been meritless under MCL 768.27b.

Under the statute, in a prosecution for domestic violence, the plaintiff could introduce the prior acts for any relevant purpose. In this case, the other acts were probative to show defendant's characteristic scheme to argue with the complainant, physically assault her, restrict her movement, and later try to normalize his pattern of behavior by equating it to some toxic yet passionate relationship they shared. Even if counsel had objected and the evidence been

evaluated under MRE 403, the court would not have found that defendant was prejudiced. The other acts were highly probative of defendant's propensity to engage in assaultive behavior, specifically with this complainant. The evidence was also not unfairly prejudicial because the prior two acts were not of the same magnitude of violence as the instant offenses for which defendant was charged and, they fairly represented the complainant also arguing with and assaulting defendant, and violating no contact orders. Any prejudice was further minimized by the court's reading of M Crim JI 4.11 to the jury that limited the purposes for which the evidence could be used. *People v Roper*, 286 Mich App 77, 106; 777 NW2d 483 (2009). Defendant lastly cannot demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different because the jury still had to consider the complainant's testimony and defendant's text and Facebook messages to the complainant that appeared to agree with the complainant's accusations against him.

Defendant additionally argues in his Standard 4 brief pursuant to Administrative Order 2004–6, Standard 4, that trial counsel was ineffective for failing to request additional discovery of the prior acts. We disagree. The notice described the prior convictions that by their nature were matters of public record. Further, there is no evidence in the record that defense counsel did not conduct an independent investigation of the other acts or that his decisions regarding cross-examination regarding those acts was not a matter of trial strategy.

## III. EXPERT WITNESS TESTIMONY

Defendant argues that the trial court erred in allowing Holly Rosen to testify as an expert without first assessing the admissibility of her testimony under MRE 702 and MRE 703, and that the plaintiff failed to comply with discovery requirements under MCR 6.201. He further argues that trial counsel was ineffective for not: 1) pursuing disclosure of Rosen's curriculum vitae and summary of proposed testimony before trial; 2) conducting voir dire of Rosen to test her qualifications as an expert under MRE 702 and 703; and 3) objecting to her testimony as being beyond the scope of her expertise and qualifications. In his Standard 4 brief, defendant additionally argues that counsel was ineffective for failing to conduct a reasonable investigation or consult with other experts in the areas of Rosen's expertise. Defendant argues in both his principle and Standard 4 brief that defense counsel vouched for Rosen's credibility.

### A. STANDARDS OF REVIEW

Defendant did not object to plaintiff's production of Rosen as a witness or its failure to comply with MRE 6.201 in the trial court. Thus, we review defendant's unpreserved evidentiary challenges for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 762-763. With respect to defendant's claims of ineffective assistance of counsel, as noted above, we review for clear error the trial court's findings of fact and de novo questions of constitutional law. *Trakhtenberg*, 493 Mich at 47. And because defendant did not make a motion in the trial court for a new trial or for an evidentiary hearing, our review is limited to errors apparent on the record. *Matuszak*, 263 Mich at 48.

### B. ANALYSIS

The admission of expert testimony is governed by MRE 702 and MRE 703. Under MRE 702, a witness may be qualified as an expert by knowledge, skill, experience, training, or education. The testimony of expert witnesses is permitted under the rule when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact act issue." MRE 702. "[T]he court may admit evidence only once it ensures, pursuant to MRE 702, that expert testimony meets that rule's standard of reliability." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 782; 685 NW2d 391 (2004). This standard requires the testimony to be based on sufficient facts or data, be "the product of reliable principles and methods," and for the witness to have applied the principles and methods reliably to the facts of the case. MRE 702. "This gatekeeper role applies to all stages of expert analysis. MRE 702 mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data." *Id*. "The facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence," or at the court's discretion, "admitted in evidence thereafter." MRE 703. "[T]he reference to facts or data 'in the *particular* case' limits the type of evidence that must be admitted into evidence to facts or data that are *particular* to that case. That is, the fact or datum must be specific to the case." *People v Yost*, 278 Mich App 341, 390; 749 NW2d 753 (2008).

"[W]hether expert testimony is beyond the ken of common knowledge is a common sense inquiry that focuses on whether the proposed expert testimony is on a matter that would be commonly understood by the average person." *People v Kowalski,* 492 Mich 106, 123; 821 NW2d 14 (2012). Expert testimony may allow the jury to "intelligently evaluate" a foreign experience in cases where "certain groups of people are known to exhibit types of behavior that are contrary to common sense and are not within the average person's understanding of human behavior." *Id.* at 124. For example, expert testimony can be used to help the jury understand the behavior of a child who has been the victim of sexual abuse, or the actions of a domestic violence victim. *Id.; People v Peterson,* 450 Mich 349, 375–377; 537 NW2d 857 (1995); *People v Christel,* 449 Mich 578, 591–596; 537 NW2d 194 (1995). In *Christel,* 449 Mich at 592, our Supreme Court stated that expert testimony may be needed to explain why "a complainant endures prolonged toleration of physical abuse and then attempts to hide or minimize the effect of the abuse, delays reporting the abuse to authorities or friends, or denies or recants the claim of abuse." The Supreme Court held that such expert testimony is only admissible when "it is relevant and helpful to the jury in evaluating a complainant's credibility and the expert witness is properly qualified." *Id.* at 580. Even then, an expert "may not opine whether the complainant is a battered woman, may not testify that defendant was a batterer or guilty of the instant charge, and may not comment on the complainant's truthfulness." *Id.* at 580.

In the instant case, review of the record reveals that Rosen was clearly qualified to testify regarding the areas of non-intuitive victim responses, perpetrator tactics, and the serial nature of domestic violence. Much of her testimony was germane to provide context to various aspects of relationships involving domestic violence and how some victims of such violence may continue to return to the relationship even after violent events. As defendant contends, however, some of her testimony went beyond that which would be relevant to the jury in evaluating the complainant's credibility in the instant case. Defense counsel should have objected to the irrelevant testimony, and we can find no strategic reason for counsel's failure to lodge objections. However, reversal is not warranted unless we determine the error was outcome

determinative, and we do not. This was a credibility match where the complainant and defendant provided opposite accounts of what occurred and both had supporting witnesses. However, the jury was also presented with defendant's Facebook and text messages with the complainant where the complainant accused defendant of having sexually assaulted her and defendant did not deny the accusation. In light of the strength of other evidence against the defendant, we find it improbable that defendant's trial outcome would have been different.

Defendant also argues that Rosen's testimony regarding statistics and studies did not pass the test of MRE 702. Under MRE 702, testimony must be based on sufficient facts or data and the product of reliable principles and methods when the witness is applying them to the facts of the case. Upon review of the record, we conclude that Rosen's testimony met the admissibility requirements of MRE 702. And despite a brief statement regarding the rarity of victims fabricating abuse, Rosen did not opine that defendant was a batterer or a liar or offer any opinion about the complainant's truthfulness or whether the charged offenses occurred. See *Christel*, 449 Mich at 580.

Defendant next claims his trial counsel was ineffective for not pursuing discovery and for failing to attack Rosen's testimony at trial on various bases.[4] Defendant contends that on October 9, 2015, Carpenter filed a request for discovery pursuant to MCR 6.201 MCR 6.201(A)(3) mandates that a party provide upon request "the curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion." There is no evidence in the record that plaintiff produced Rosen's curriculum vitae or a written description of the substance of her proposed testimony prior to trial. Defendant contends that his trial counsel was ineffective for failing to raise the matter before the trial court. He claims this error was outcome determinative because had counsel objected, "Rosen would not have testified or she would have been limited in the scope of her testimony." MCR 6.201 however, does not mandate exclusion of an expert's testimony as a remedy for the discovery violation. MCR 6.201(J).[5] Further, given our determination that her testimony that went beyond the relevant scope of this case was not outcome determinative, defendant's attendant ineffective assistance claim also fails.

---

[4] As noted above, in order to establish a claim of ineffective assistance, the defendant must show that "(1) counsel's performance was below an objective standard of reasonableness under professional norms and (2) there is a reasonable probability that, if not for counsel's errors, the result would have been different and the result that did occur was fundamentally unfair or unreliable." *Odom*, 276 Mich App at 407.

[5] Under MCR 6.201(J), the court, in its discretion, may choose to "order the party to provide the discovery or permit the inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances."

Defendant also argues that trial counsel was ineffective for failing to conduct voir dire of Rosen to test her qualifications as an expert under MRE 702 and 703. We disagree. Decisions whether to question a witness are presumed to be matters of trial strategy that we will not second-guess with the benefit of hindsight. *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004). It appears that counsel strategically chose not to illuminate Rosen's qualifications by voir dire, but rather used his cross-examination to promote defendant's theory of the case, instead. He questioned Rosen about false reports of domestic violence and reasons for fabrication, such as revenge. He also highlighted through her testimony that domestic violence relationships often involve mutual abuse and levels of dysfunctionality, and actions of immaturity by both parties.

Defendant also argues in his Standard 4 brief that his trial counsel failed to conduct a reasonable investigation of Rosen's areas of expertise by not consulting with other experts in the same fields. We disagree. Defendant states that he made this request at trial during Rosen's testimony. He stated that defense counsel told him, "I don't think it would be helpful." Defense counsel's statement indicates that he considered and rejected that strategy for defendant's case. "[C]ounsel's failure to call a particular witness is presumed to be trial strategy." *People v Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999). "[T]he defendant must show that his counsel's failure to call these witnesses deprived him of a substantial defense that would have affected the outcome of the proceeding." *People v Daniel*, 207 Mich App 47, 58; 523 NW2d 830 (1994). Again, Rosen's testimony was largely inapplicable to prove any fact in dispute and counsel advanced defendant's theory of the case otherwise by cross-examination.

Defendant additionally argues that defense counsel vouched for Rosen's credibility when he told Rosen during cross-examination, "you're educating me, thank you." We disagree. It was an isolated statement[6], and the jury was instructed that the lawyer's statements were not evidence and the jury is presumed to follow the instructions given it by the court. *People v Torres (On Remand)*, 222 Mich App 411, 423; 564 NW2d 149 (1997).

## IV. SENTENCING

Defendant contends that the trial court's imposition of 30 years as a minimum sentence for his CSC III conviction was an unreasonable and disproportionate departure from the recommended guideline range.

## A. STANDARD OF REVIEW

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502,

---

[6] We are unable to glean from the record whether defense counsel's remark was genuine or sarcastic.

cert den sub nom *Michigan v Lockridge*, 136 S Ct 590; 193 L Ed 2d 487 (2015) (internal citation omitted). "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). "Resentencing will be required when a sentence is determined to be unreasonable," *Lockridge*, 498 Mich at 392, and the trial court "fail[s] to provide adequate reasons for the extent of the departure sentence imposed. . . ," *Steanhouse II*, 500 Mich at 477; *People v Steanhouse (On Remand)*, ___ Mich App ___; ___ NW2d ___ (2017); slip op. at 2.

B. ANALYSIS

In *Steanhouse I*, this Court considered the following non-exhaustive list of factors as relevant in reviewing whether a sentence was proportionate:

(1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (*Steanhouse I*) (internal citations omitted), rev'd in part on other grounds by *Steanhouse II*, 500 Mich 453; 902 NW2d 327 (2017)].

Defendant's sentencing guidelines with the fourth habitual enhancement were 117 to 320 months for the CSC III conviction, 43 to 152 months for the assault with intent to commit sexual penetration conviction, and 24 to 76 months for his third offense of domestic violence. The court sentenced defendant to 30[7] to 50 years for the CSC III conviction, 8 to 50 years for the assault conviction, and 5 to 50 years for the domestic violence conviction. It provided several reasons for its upward departure from the guidelines, including defendant's criminal history, defendant's escalation in violence with this complainant, and the fact that defendant assaulted the complainant in front of her daughter. Defendant contends he was doubly penalized because these factors were already accounted for in the advisory guidelines range. He specifically argues that his criminal history and the "escalation of violence" the court referred to were already factored in with defendant's habitual offender fourth offense increase and prior record variables calculation. We disagree.

The court noted that defendant's behavior and characteristics exceeded that which was accounted for under the offense variables scoring. Indeed, defendant exceeded the highest prior record variable scoring by fifteen points and more than doubled the offense variable scoring of the highest offense level cell grid. Under *Steanhouse I*, the court was able to take into account

---

[7] A sentence of 320 months translates to 26.66 years. Thus, the trial court departed from the highest end of the minimum guidelines range by 40 months, or 3.33 years.

the seriousness of the offense, the relationship between the victim and the aggressor, and the defendant's ability to be rehabilitated in determining a sentence proportionate to the seriousness of the crime. 313 Mich App at 46. The evidence at trial supported that over time defendant's actions escalated from throwing a glass of water at the complainant's face, spitting on her, and dragging her by her hair, to physically and sexually assaulting her with others present. The court's concern about defendant's continuation of violence in relation to his rehabilitative potential was justified given that defendant's last two assaults were committed in violation of specific probation and parole conditions not to have any contact with the complainant, and the instant offenses were more violating than the two previous.

Under *Steanhouse I*, the court may also consider factors that are not otherwise adequately covered by the guidelines to increase a defendant's sentence. *Id*. The court did not abuse its discretion in considering that defendant assaulted the complainant while her five-year-old daughter was present. The trailer where the assaults took place was small and the complainant testified that she screamed for her daughter to help her, and that her daughter heard her and started coming to the bathroom where her mother was being assaulted until the defendant yelled at her to go back in the bedroom. The complainant also testified that after defendant released her from the bathroom the first time, the child was crying hysterically, and that while she tried to console the child, defendant pulled her away by the hair and dragged her back into the bathroom. Offense variable nine, which takes into consideration the number of victims, does not account for these circumstances.[8]

The court's reasons for its departure sentence were adequate and considered the factors enumerated by this Court in *Steanhouse I*. Given "the seriousness of the circumstances surrounding the offense and the offender," we find the court's sentence was proportionate. *Milbourn*, 435 Mich at 636.

## V. OTHER STANDARD 4 BRIEF ISSUES

Defendant presents the following additional arguments in an in pro per brief filed pursuant to Administrative Order No. 2004–6, Standard 4.

### A. ADMISSIBILITY OF EVIDENCE

"This Court reviews a trial court's decision regarding the admissibility of evidence for an abuse of discretion. An abuse of discretion occurs when an unprejudiced person, considering the facts on which the court acted, would conclude that there was no justification or excuse for the court's ruling." *People v Taylor*, 252 Mich App 519, 521; 652 NW2d 526 (2002) (internal citation omitted).

Defendant argues the court abused its discretion in denying him the opportunity to present evidence that the complainant had allegedly sexually molested his son. He contends the

---

[8] Under offense variable nine, a victim is one "who was placed in danger of physical injury or loss of life or property[.]" MCL 777.39(2)(a).

-10-

evidence was relevant to show the complainant's motive to fabricate the charges against him and to attack her credibility.

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Here, whether the complainant molested defendant's son was not relevant to determining whether defendant had sexually assaulted the complainant. The evidence would have been collateral to any fact in question and had no probative value to the issues in this case. Additionally, the introduction of such evidence would have been confusing to the jury when it was not called upon to decide the complainant's purported sexual molestation of defendant's son. Exclusion of the evidence based on relevancy was a reasonable and principled outcome.

The evidence would also not have been admissible to prove the complainant's motive to fabricate the charges against defendant. The complainant reported being sexually assaulted by defendant on August 1, 2014. The Children's Protective Services' investigation and assessment of defendant's son took place over one year later in December 2015. The investigation and assessment, having occurred after the assault at issue, could not have been a motivating factor for the complainant to fabricate charges of the assault. Even if we were to assume that the complainant's alleged sexual abuse of defendant's son predated defendant's assault on the complainant, defendant fails to explain why anything the complainant may have done to defendant's son was a motivating factor for the complainant to fabricate the charges against defendant. There was no indication that the complainant wanted defendant incarcerated so she could continue the purported sexual abuse, or that she was in fear of prosecution at the time.[9]

### B. PRESENTENCE INVESTIGATION REPORT

Defendant contends that he was denied the opportunity to review and refute information contained in the presentence investigation report (PSIR).[10] Defendant acknowledges that neither he nor his counsel objected to the information in the PSIR at sentencing. In fact, defendant concedes that his counsel represented to the court that they—being defendant and his counsel—

---

[9] In addition to it being irrelevant, defendant's desire to admit such evidence could easily have backfired and led jurors to conclude that defendant had coaxed his son into making false allegations of sexual abuse against the complainant in order to impugn her credibility or exact revenge on her for accusing him of the charged offenses.

[10] Under MCR 6.425(E)(1)(a), a sentencing court is required to determine on the record whether the defendant, the defendant's lawyer, and the prosecutor have had an opportunity to read and discuss the presentence report. The court is also required to give each party an opportunity to challenge the accuracy of the information in the report and "to advise the court of any circumstances they believe the court should consider in imposing sentence[.]" MCR 6.425(E)(1)(b)-(c). The trial court complied with these requirements. Defendant argues that his attorney denied him the opportunity to review the PSIR before sentencing and misrepresented at sentencing that he had reviewed it and had no objections to its contents.

had in fact reviewed the PSIR and had no objections or corrections to the factual content. "To preserve an issue regarding the accuracy of the [PSIR] for appeal, the defendant must object to the error at the time of sentencing." *People v McCrady*, 244 Mich App 27, 32; 624 NW2d 761 (2000). To the extent this issue is not waived, our review is for plain error affecting defendant's substantial rights. *Id*.

On appeal, defendant challenges the accuracy of the statement in the PSIR indicating that the Michigan State Police found the allegations of complainant having molested defendant's son to be baseless. Defendant contends that because he attempted to introduce evidence of the complainant's alleged molestation of his son at trial, had he had a chance to read the PSIR, through his counsel he could have produced evidence supporting the sexual assault allegations. Defendant now argues that because the court sentenced him based on inaccurate information, he is entitled to resentencing. Resentencing however, is not required because defendant has not shown that he was prejudiced by the challenged statement in the PSIR. Neither is a *Ginther*[11] hearing necessary under these circumstances, as defendant requests. At trial, the court found irrelevant any allegations of abuse by complainant upon defendant's son, and there is no evidence that it played any role in the trial court's sentencing decisions. Furthermore, defendant is not alleging that the statement reporting the results of the Michigan State Police investigation are inaccurate; his only contention is essentially that the Michigan State Police were wrong. But the PSIR does not weigh in on the substance of the sexual assault allegations; it simply conveys the results of the police investigation. Thus, its presence in the PSIR did not deprive defendant of any substantial right.

## C. SPEEDY TRIAL

Defendant claims that he was denied his right to a speedy trial.

> The determination whether a defendant was denied a speedy trial is a mixed question of fact and law. The factual findings are reviewed for clear error, while the constitutional issue is a question of law subject to review de novo. In addition, this Court must determine whether any error was harmless beyond a reasonable doubt. Violation of the constitutional right to a speedy trial requires dismissal of the charge with prejudice. [*People v Waclawski*, 286 Mich App 634, 664-665; 780 NW2d 321 (2009) (citations omitted)].

The right to a speedy trial is guaranteed by the United States and Michigan Constitutions. US Const Am VI; Const 1963 art 1, § 20. See also MCL 768.1 and MCR 6.004(A). [12] We

---

[11] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[12] Defendant also refers to the "180-clock," and appears to conflate the concepts of a right to a speedy trial and the 180-day rule, which is set forth in MCL 780.131 and MCR 6.004(D)(1). The 180-day rule is not applicable in this instance because defendant has not established that "the department of corrections cause[d] to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint [wa]s pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant,

consider four factors when evaluating whether a defendant was deprived his right to a speedy trial:

> (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury. Following a delay of eighteen months or more, prejudice is presumed, and the burden shifts to the prosecution to show that there was no injury.[13] [*People v Williams*, 475 Mich 245, 261-262; 716 NW2d 208 (2006) (internal citation omitted)].

In the instant case, a warrant for defendant's arrest was authorized on August 12, 2015. At that time, defendant was incarcerated in the Michigan Department of Corrections for violating the terms of his parole not to have contact with the complainant. He was bound over on October 21, 2015. Initially, defendant waived his right to a preliminary examination.[14] Several delays appear to be attributable to reasonable motions brought by defense counsel to disqualify the entire Isabella trial bench because defendant was the step-brother to the court's security officer, and because a remand was granted to defendant for a preliminary examination.[15] At the February 19, 2006 settlement conference, defendant sought to adjourn the scheduled trial date and waived his right to a speedy trial.[16] On April 22, 2016, at a settlement conference, defendant sought and received another adjournment because he wished to hire a new attorney and prepare further. His new attorney appeared on July 8, 2016 and filed motions in limine on August 30, 2016. Defendant's trial commenced on September 1, 2016.

---

indictment, information, or complaint." *Id*. Defendant cites *People v Freeman*, 122 Mich App 260; 332 NW2d 460 (1982), for the proposition that the 180-day rule begins to run with the defendant's incarceration or detention when there is an outstanding warrant or complaint pending and the prosecutor knows or should know that the defendant is incarcerated. But *Freeman* relies on *People v Hill*, 402 Mich 272, 280-281; 262 NW2d 641 (1978), which was overruled by *People v Williams*, 475 Mich 245, 261-262; 716 NW2d 208 (2006).

[13] Defendant is not entitled to a presumption of prejudice because the delay was less than 18 months.

[14] Defendant waived his first preliminary examination on October 21, 2015.

[15] The case was remanded for a preliminary examination on December 4, 2015. The record does not contain any motion by the defendant to remand the case in December for a preliminary examination, however, this remand order was entered on the date of a scheduled pre-trial conference and it is reasonable to infer the remand was pursuant to defense counsel's request.

[16] Defendant later asserted his right to a speedy trial in the trial court and the court reminded defendant of his earlier waiver on the record. "Waiver is the intentional relinquishment or abandonment of a known right or privilege." *People v Williams*, 475 Mich 245, 260; 716 NW2d 208 (2006).

We conclude that most of the delays between defendant's arrest and his trial were attributable to defendant, and they were related to his need to prepare to meet the evidence presented against him before an impartial judge. Further, defendant waived, rather than asserted, his right to a speedy trial in February, 2016 when seeking an adjournment. Finally, defendant fails to demonstrate that he was prejudiced by the delay. The right to a speedy trial protects "three interests of the defendant: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; (3) limitation of the possibility that the defense will be impaired." *People v White*, 54 Mich App 342, 351; 220 NW2d 789 (1974). Defendant did not suffer oppressive pretrial incarceration or undue anxiety and concern from the delay because he was already incarcerated for violating the terms of his parole not to have any contact with the complainant. Further, "anxiety, alone, is insufficient to establish a violation of defendant's right to a speedy trial." *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997). "In considering the prejudice to the defendant, the most serious inquiry is whether the delay has impaired the defendant's defense." *People v Simpson*, 207 Mich App 560, 564; 526 NW2d 33 (1994). Defendant states his defense was impaired, but fails to explain his assertion. Further, the record belies this contention when defendant requested and was granted an adjournment of the trial in April 2016 for the specific purpose of being able to fully prepare his defense. Accordingly, balancing the four relevant factors shows that defendant was not denied his right to a speedy trial.

Affirmed.

/s/ Peter D. O'Connell
/s/ Jane M. Beckering
/s/ Cynthia Diane Stephens

-14-