*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 18, 2020

Plaintiff-Appellee,

v

No. 344591
Kent Circuit Court
LC No. 17-010339-FH

WILLIAM ALONZO BURRIS,

Defendant-Appellant.

Before: MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

The Sixth Amendment right to counsel commands that an accused "be defended by the counsel he believes to be best." *United States v Gonzalez-Lopez*, 548 US 140, 146; 126 S Ct 2557; 165 L Ed 2d 409 (2006). The right to counsel is so vital that the United States Supreme Court deems it "the root meaning of the constitutional guarantee" to a fair trial. *Id*. at 147-148. "A choice-of-counsel violation occurs *whenever* the defendant's choice is wrongfully denied." *Id*. at 150 (emphasis in original). Erroneous deprivation of the right to choose one's counsel is structural error, necessitating a new trial. *Id*.

Only a handful of grounds allow a court to lawfully deny a defendant's right to be represented by a retained lawyer. Relevant here, a court may reject chosen counsel in the interests of protecting the court's trial calendar. But "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay" violates the Sixth Amendment right. *Morris v Slappy*, 461 US 1, 11-12; 103 S Ct 1610; 75 L Ed 2d 610 (1983) (cleaned up).[1] The trial court's rulings in this case epitomize "unreasoning and arbitrary insistence upon expeditiousness

---

[1] This opinion uses the new parenthetical "cleaned up" to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

in the face of a justifiable request for delay." Therefore, we must vacate defendant William Burris's convictions and remand for a new trial.

## I. FACTUAL BACKGROUND

The prosecution charged that while babysitting his young daughter, AM, and several other children, Burris showed two of the girls adult pornography on his cell phone and asked whether they would like to engage in the acts depicted. AM testified that Burris also touched her breasts and "private part" over her clothing.

AM recounted that she first reported Burris's acts to Jacora Seymore, Burris's girlfriend, in Burris's presence. Seymore denied that any such conversation took place. AM next reported the incident to her mother, Shaunda Carter-Matthews. During this conversation, AM disclosed that Burris had been molesting her for the past two years. Carter-Matthews called the police. Detective Jennifer Wordelman referred AM to the Children's Advocacy Center, where a forensic interviewer, Amy Minton, interviewed her and two of the other girls. Detective Wordelman also referred AM for an examination with a sexual assault nurse examiner.

The prosecutor charged Burris with one count of CSC-II for assaulting AM and two counts of accosting a minor for immoral purposes, one count with regard to AM and one with respect to another of the girls. At the preliminary examination, the prosecutor advised that the prosecution would not pursue the charge of accosting the second girl, but would seek to add a second count of CSC-II for assaulting AM. Burris was bound over for trial. A jury found him guilty of one count of CSC-II and the sole count of accosting a minor for immoral purposes

## II. DENIAL OF THE RIGHT TO CHOSEN COUNSEL

### A. GUIDING LEGAL PRINCIPLES

The United States Supreme Court's Sixth Amendment jurisprudence leaves no doubt but that representation by counsel of choice should be regarded as the default position when a judge is asked to consider a substitution request. Trial courts "must recognize a presumption in favor of" counsel of choice, and that a litigant's decision to hire his own counsel may be overcome only in limited circumstances. *Wheat v United States*, 486 US 153, 164; 108 S Ct 1692; 100 L Ed 2d 140 (1988). Our Supreme Court, too, has forcefully underscored the importance of honoring this right.

In *People v Williams*, 386 Mich 565, 568; 194 NW2d 337 (1972), the defendant's attorney moved to withdraw from representation on the first day of trial because the defendant had retained a different lawyer. The trial court denied the motion and declared that no continuance would be granted. *Id*. Even though it applied a far more deferential standard of review than the standard

operative today, the Supreme Court held that the trial court reversibly erred by issuing both rulings.[2]

Our Supreme Court reached that result by applying the rule set forth in *Ungar v Sarafite*, 376 US 575, 589; 84 S Ct 841; 11 L Ed 2d 921 (1964), which acknowledges that although continuance decisions are traditionally within the trial court's discretion, "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." The Court summarized in *Williams*, 386 Mich at 575-576:

> The defendant requested a continuance in this case to obtain a new lawyer. The right to assistance of counsel is a precious constitutional right. It is probably the most important right of any defendant in a criminal trial. . . . This right has been jealously protected by the courts and is of critical importance to any defendant in a criminal trial. Hence, whenever this right is asserted, the trial court must take special care to insure that it is protected." [*Id*. at 576.]

Acknowledging that the trial court's docket may well have been "heavily burdened" due to other events, the Supreme Court nevertheless held that "the desire of the trial courts to expedite court dockets is not a sufficient reason to deny an otherwise proper request for a continuance." *Id*. at 577.

## B. UNDERLYING FACTS

On January 22, 2018, attorney Edwin Johnson filed a notice of substitution of counsel, signaling that Burris wished to replace his appointed attorney, Edward J. Lis, with Johnson. The case had reached the circuit court just two months earlier. The trial court dismissed Johnson's appearance after a brief hearing conducted on February 26. The transcript reveals that the trial court made no effort to accommodate Johnson's need for extra time to prepare for trial. Rather, the court insisted on going to trial in 30 days, a timeframe resisted by both Johnson and the prosecutor. After the hearing concluded, the court set the trial for April 23, 2018, more than *60* days out—a period of adjournment never offered to Johnson.

A few weeks before the April trial date, Johnson tried to substitute back into the case. The trial court again denied Burris his right to be represented by counsel of choice. We review the two

---

[2] In *People v Williams*, 386 Mich 565, 568, 571-572; 194 NW2d 337 (1972), the Supreme Court relied on the abuse of discretion standard described in *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959), which permitted an appellate court to reverse only when the trial court's decision was "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." The *Spalding* standard entitled the trial court's decision to "the utmost level of deference." *People v Babcock*, 469 Mich 247, 266; 666 NW2d 231 (2003). The standard that now governs provides that "[a]n abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018) (cleaned up).

events separately and in detail, as their illumination reveals the arbitrary nature of the court's rulings and its failure to attribute any legal relevance to Burris's Sixth Amendment right.

### 1. THE FEBRUARY ADJOURNMENT REQUEST

Attorney Lis represented Burris during the November preliminary examination. At the outset of the exam, Burris expressed dissatisfaction with Lis. Burris complained that Lis had not contacted several witnesses and "he just keeps advising me to waive my preliminary exam[.]" Burris declared, "I don't wanna waive it," despite that the lawyer he intended to hire had asked "to have Mr. Lis postpone it." Because that lawyer had not entered an appearance, the exam went forward. On November 14, Burris waived arraignment in the circuit court.

On December 28, 2017, the circuit court issued a notice setting the case for trial on February 12, 2018. As it happened, Johnson had visited the courthouse the day before to review the file; the trial notice had not yet been issued and did not appear in the file. Johnson was unaware of the February trial date when he filed a substitution of counsel on January 22, 2018. After filing a formal appearance and a discovery demand on February 9, Johnson learned of the February 12 trial date.

On February 12, Johnson appeared before the trial judge and requested an adjournment; this hearing has not been transcribed. An order reflects that the trial court set the matter for trial on February 26. On February 16, Johnson filed a motion to adjourn the trial. He averred that he had a trial scheduled in Kalamazoo County set to begin on February 27, which he expected "to continue for two weeks." Additionally, Johnson asserted, discovery in Burris's case was incomplete, and more investigation was necessary:

> [T]he Prosecution's case is based primarily on information gathered in two Family Court cases that have been dismissed, with Defense having no information regarding why these two lower standard [sic] cases were dismissed, or access to any of the investigators that developed the case.

The parties appeared before the trial court on February 23 to consider the adjournment motion. The transcript reflects that the trial court repeatedly interrupted Johnson, misstated facts, and telegraphed that Johnson would not be permitted to represent Burris. The court made no mention of Burris's Sixth Amendment right at any point during the lengthy colloquy and never sought Burris's input regarding his reasons for seeking the substitution:

> *The Court*: All right. Mr. Johnson, we're set for trial in this matter. This was our second trial date for next Monday. It's now Friday before. And you filed a motion for an adjournment, again. You asked for an adjournment last time. We gave you a couple of weeks. Why are we back here today on an adjournment?
>
> *Mr. Johnson*: We're back here today because, as I informed Your Honor at the last adjournment, I had a prior case scheduled for trial. It's going forward next week as scheduled. I believe the Kalamazoo Circuit Court made contact with you regarding that. At least, that was their intent yesterday.

And, quite frankly, Your Honor, I have not had an opportunity to fully investigate, do witness lists, do anything in this case.

*The Court*: Well, sir, the Court Rule requires that you submit witnesses within 28 days of trial, is that correct?

*Mr. Johnson*: That is correct, sir. It isn't - -

*The Court*: And, sir, when you filed your appearance, you knew there was a trial date, is that not correct?

*Mr. Johnson*: No, I did not sir. That is not correct.

*The Court*: You didn't check the . . . court file?

*Mr. Johnson*: I - - Your Honor, I came to Grand Rapids and pulled a registry of actions on the 27th of December. And there was no trial scheduled at that point in time.

*The Court*: Well sir, that's not quite correct, according to the Court file.

*Mr. Johnson*: Well, I've got the registry of actions.

*The Court*: Sir, I'm . . . looking at the first trial date, the notice was sent out on December 28th for February 12th. According to the court file.

*Mr. Johnson*: And as I said, Your Honor, I came in - - of course I wasn't on the case at that time. But I am in on the - -

*The Court*: Well, sir, also, the - - at the preliminary exam, your client was represented by an attorney, Mr. Ed Lis. But . . . he said on the record, that you were the attorney and you had asked for . . . a waiver of the hearing.

*Mr. Johnson*: That is untrue, sir.

*The Court*: Well, that's what the transcript says.[3]

*Mr. Johnson*: Well, . . . I don't care what the transcript says because as you probably know, . . . my substitution of attorney was dated - -

*The Court*: Jan 19th.

*Mr. Johnson*: - - January 19th.

---

[3] Johnson was correct. At the outset of the exam, Burris stated that *Lis* sought the waiver; Johnson had asked that Burris communicate a desire for an adjournment.

*The Court*: Okay. And - -

*Mr. Johnson*: And I received notice that it was signed on January 24th.

*The Court*: And 28 days from January 19th was last week. And you have not filed a witness list, is that correct?

*Mr. Johnson*: That is correct, Your Honor. How could I - - Your Honor, I think the Court's being a bit unreasonable with this. I did not receive discovery on this case until January 24th. And this is quite a complicated case, Your Honor. And from what I can see, very little was - - was done. A witness list was not developed by Mr. Lis. There is the issue of potential collateral estoppel in this case. This case began - -

*The Court*: Explain your collateral estoppel in a criminal case, counsel.

*Mr. Johnson*: This case was started in June of 2017 by a referral from Grand Rapids Police Department to [Child Protective Services] CPS. CPS conducted an investigation, put together a petition, and this petition was dismissed against Mr. Burris - -

*The Court*: This wasn't a criminal case.

*Mr. Johnson*: - - on - - I understand it wasn't charge[d] - -

*The Court*: That was - - that was a CPS.

*Mr. Johnson*: - - I understand what it was, Your Honor. The case was dismissed on - -

*The Court*: Well, counsel you've been on - -

*Mr. Johnson*: Sir, you're not letting me explain.

*The Court*: Sir, you've been on here 28 days. Over 28 days. And you're telling me you've done nothing on this case?

*Mr. Johnson*: I - - that's essentially what I'm telling you, Your Honor.

*The Court*: Well, then why should I allow you to continue as an attorney on this case?

*Mr. Johnson*: If you want to cause me to withdraw, Your Honor, then that's your choice, but I'm - - I'm saying again, that I'm the choice of this young man to be his attorney, and I have not had an opportunity to do what needs to be done in this case, and, in fact, I'm asking for at least 90 days because we have to pierce the issues of privilege, and subpoena as far as the family court case is concerned.

-6-

The fact of the matter is, Your Honor, the State has had this case since June. They're [sic] complaint is based entirely on CPS report that they are mimicking as they go. That case - -

*The Court*: Have you had - -

*Mr. Johnson*: - - has been dismissed, Your Honor - -

*The Court*: Counsel. Have you read the transcript in the preliminary exam?

*Mr. Johnson*: Yes, I have, Your Honor.

*The Court*: Okay. They don't make any reference to the CPS case, do they?[4]

*Mr. Johnson*: I have the discovery - -

*The Court*: Isn't this case based on the testimony of a young girl?

*Mr. Johnson*: Based on the testimony of a young girl in the CPS case, Your Honor. That case was dismissed on September 6th. The - - the State took action and filed a complaint against this defendant in October, entirely based on information that was provided in the - - on - - on a abuse and neglect case which was dismissed on a preponderance of evidence standard.

We have to pierce that. I need those witnesses, and I'm sure Your Honor is aware that we have to - - we have to take care of privilege, subpoena, it has to go through Lansing. We're at least 60 - -

*The Court*: Sir, you - - you - -

*Mr. Johnson*: - - days away from that.

*The Court*: - - you have known all this and you're telling me you've done nothing.

*Mr. Johnson*: No, I have not told you I've done nothing. I said nothing was done until I got this case. And Your Honor, I was in a murder case in Saginaw. I run a one-man office. I do the research. I do the writing. I do the windows. I think it's unreasonable of this Court to demand that less than 30 days after I gave notice, I got notice that my substitution of attorney was signed, that we were supposed to be at trial. And it's just a little over 30 days since I received notice that we were supposed to be here for the second trial.

---

[4] A detective called as a witness at the preliminary exam testified to having received copies of the CPS reports.

As I said, Your Honor, I'm not ready and can't be ready for at least 90 days because of the work that has to be done on this case - -

*The Court*: Sir - -

*Mr. Johnson*: - - in order for my client to be able to exercise his rights.

*The Court*: - - one of the things that concerns me is - - I notice in your motion to adjourn, you stated that you have a trial in Kalamazoo that will continue for two weeks.

*Mr. Johnson*: I said, "estimated."

*The Court*: It's interesting that in Kalamazoo, they say they'll be - - they're starting it on Wednesday and they'll be done next week. . . .

*Mr. Johnson*: Well, Your Honor, I'm only going by what the prosecution estimated the time of the trial would be. I have two witnesses. We have to go through their - -

*The Court*: Well, I want to hear from the Prosecutor on this matter.

*Ms. Richardson*: Well, Your Honor, when it comes to cases with children, I usually give more leeway due to the fact that the last thing I want is it to come back on appeal because he's not prepared, and he does a poor job at trial because of that. And it's ineffective assistance of counsel. Because of his continued statements to me that he's not ready, I have waited to meet with this little girl again to get her prepped up for trial until this afternoon, pending the outcome of this case.

So I do not have an objection for an adjournment. I don't know about 90 days. I think that's a bit lengthy.

*The Court*: It's never going to be 90 days.

*Ms. Richardson*: *But I don't have an objection for an adjournment.*

*Mr. Johnson*: Your Honor, if I may?

*The Court*: Go ahead.

*Mr. Johnson*: I'm requesting 90 days because this case is entirely based on CPS - - CPS case that was dismissed, and in order for me to pierce privilege and be able to get the information that I need, what we have, Your Honor - - and I want to explain to you. What I have is a petition that sounds horrible. Witness statements that sound horrible. And then, all of a sudden, I have this case being dismissed on a preponderance of evidence standard. Apparently something happened in between the time that this petition was filed and the time it was dismissed that we're not aware of. I can tell you, in going through the file, that Mr. Lis requested a specific

-8-

CPS report from Sequoya Hudnell that has never been received. I can tell you that I have gone - -

*The Court*: Counsel, why haven't you - -

*Mr. Johnson*:  - - Your Honor - -

*The Court*: - - filed a motion - -

*Mr. Johnson*:  - - may I finish?

*The Court*: - - with regards to that?

*Mr. Johnson*:  Your Honor, I just got on the case. I was in a murder case - -

*The Court*: You've been on the case a month.

*Mr. Johnson*:  Your Honor, I was in a murder case in Saginaw. Okay? I run a one-man office. I can't do it all at one time.

*The Court*:  Counsel, if you can't handle your responsibilities, you shouldn't be assigned to a case.

*Mr. Johnson*:  Then, Judge, you shouldn't sign the appointment - - I mean, the substitution, then.

*The Court*: Well, I'm going to think twice about it next time. You can guarantee it. And as Chief Judge here, I will make sure that everybody in this Circuit is aware of that.

*Mr. Johnson*:  Your Honor, I have done work here before, and I think that the Court is being absolutely unreasonable. I am not ready and won't be ready for at least 60 and I'm asking for 90 days.

*The Court*:  Renee, what's our schedule look like for 30 days out?

*Mr. Johnson*:  I want the record to reflect that I won't be ready in 30 days, Your Honor. I have a trial that I'm going to be conducting starting next Wednesday.

*The Court*: All right. I'm going to adjourn this 30 days. If you're not going to be ready, I'm going to remove you from this case, and we'll appoint him a new attorney.

*Mr. Johnson*:  Well, Your Honor, I'm not going to be ready in 30 days, so we might as well do that now.

*The Court*: You're not - - all right. Then we'll do that now.

*Mr. Johnson*:  Thank you.

*The Court*: Okay?  You're - - excused from this case.  We'll appoint Mr. Lis who was on this case previously.  We'll try it in 30 days.

*Mr. Johnson*:  Your Honor, and I want the Court to know that if this case goes sideways, I'm going to be addressing this action, too.  I think this is totally unreasonable.

*The Court*:  Well, counsel, the next time you file into a case, you ought to know where the case is, when the trial dates are and what's going on.

*Mr. Johnson*:  Your Honor, it shouldn't make a difference.

*The Court*: And if you say another word, you'll be held in contempt and put in lock up, sir.  [Emphasis added.]

Shortly after the hearing concluded the trial court entered an order removing Johnson as Burris's counsel and reappointing Lis.  That same day, the trial court entered an order setting the trial date for April 23, 2018, two months later.

The lengthy colloquy transcribed above is notable for the absence of any explanation on the trial court's part for its unwillingness to adjust its trial schedule.  Neither the court nor the prosecutor claimed that any witness would be inconvenienced by a delay; the case was then barely three months old.

The abuse of discretion standard requires us to examine whether the trial court's decision to deny an adjournment, thereby precluding representation by Burris's chosen counsel, fell within "the range of reasonable and principled outcomes."  The trial court expressed no reason for its denial of the motion that we can perceive, and its ruling lacked any discernable principle other than, perhaps, some unstated form of docket control.  Rather, the court appeared myopically intent on exercising its power and expressing hostility mixed with annoyance toward Johnson.  Concern for the protection of Burris's constitutional rights was lost in the skirmish. This error, standing alone, mandates a new trial.

## 2. THE APRIL EVENTS

 On March 2, 2018, after learning of the April trial date, Johnson attempted to substitute back into the case.  Lis informed him on March 7 that the trial court would not sign the proposed substitution order.  On April 16, Johnson filed a motion he styled as one "for reconsideration."  His accompanying brief recounted what had occurred in February and explained why he believed more investigation needed to be done at that time.[5]  Johnson argued that the trial court's February

---

[5] In the brief, Johnson asserted that he

> discovered that the case against Defendant[] was built entirely upon two Abuse and Neglect cases that have been withdrawn or dismissed.  Knowing that the standard for Abuse and Neglect cases is "a preponderance of the evidence", Petitioner

"conduct was arbitrary, particularly given the prosecution's lack of objections, the desires of the Defendant, the age of the case, and the fact that the trial was rescheduled within the timeframe that Petitioner had requested." He continued, "Given the complexities of the case and the difficulties in getting necessary information from the Department of Health and Human Services, the request for [60] to [90] days to prepare [was] not unreasonable." The trial court denied the reconsideration motion in a written opinion and order, finding that it was improperly filed more than 21 days after the challenged order was entered, and that it presented the same issues ruled on in February.

In his April motion, Johnson made no request for additional time to prepare for the upcoming trial. As retained counsel for Burris, Johnson sought to substitute for Lis. Instead of giving Johnson an opportunity to demonstrate that he was prepared and ready to start trial on April 28, the court summarily dismissed the substance of the motion based on its form.

In *People v Aceval*, 282 Mich App 379, 386-387; 764 NW2d 285 (2009) (cleaned up), this Court explained that the right to be represented by counsel of choice is not absolute, but is subject to "a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice . . . ." A trial court has "wide latitude" to "balanc[e] the right to counsel of choice against the needs of fairness and against the demands of its calendar[.]" *Id*. at 387 (cleaned up).

The trial court failed to engage in any balancing when it denied Johnson's request to re-enter the case. "Balancing" means considering both sides of a question, weighing their strengths and weaknesses, and articulating a finding that considers the competing interests. The trial judge did not acknowledge Burris's Sixth Amendment right to be represented by counsel of choice, and failed to explain why its calendar or the needs of public would be disserved by allowing Johnson to represent Burris. The trial court abused its discretion in April as well as in February, and in so doing denied Burris his constitutional right to be represented by counsel of choice.

## II. ADDITIONAL ERRORS

In addition to his Sixth Amendment argument, Burris raises several evidentiary issues on appeal. To provide guidance for the proceedings on remand, we address them briefly.

### A. MRE 404(b)

Burris first challenges the admission of other-acts evidence. The trial court admitted the evidence under MRE 404(b); it failed to analyze the evidence under MCL 768.27a, despite that both parties presented argument regarding its admissibility under the statute.

The evidence in dispute involves two factual scenarios. The first is that Burris began a sexual relationship with the complainant's mother, Shaunda Carter-Matthews, when Carter-

___

immediately began attempts to find out why the case was withdrawn or dismissed, and then picked up for criminal prosecution, where the much higher standard, of "beyond a reasonable doubt" is in play.

-11-

Matthews was 15 years old. Burris was 31 years old at the time. AM, the complainant, was born of this relationship.

The second factual scenario involved Burris's sexual activity with NE, then age 15, in a hotel room. NE testified that she accompanied Burris to a hotel at the insistence of her cousin, Stacy, who told NE to lie about her age. Burris bought alcohol for NE, and at the hotel supplied her with cocaine and marijuana. Stacy instructed her to take her clothes off; Burris was also naked. Burris asked NE if could perform oral sex on her and invited her to join him in a hot tub, but NE refused both offers. Burris touched her breasts before leaving the hotel.

If this evidence is offered under MRE 404(b) on remand, the trial court must consider whether it is material to an issue other than propensity. "In the context of prior acts evidence, . . . MRE 404(b) stands as a sentinel at the gate: the proffered evidence truly must be probative of something *other* than the defendant's propensity to commit the crime." *People v Crawford*, 458 Mich 376, 390; 582 NW2d 785 (1998) (emphasis in original). "[T]he prosecution bears the initial burden of establishing the relevance of the evidence to prove a fact within one of the exceptions to the general exclusionary rule of MRE 404(b)." *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004). "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *Crawford*, 458 Mich at 387. Evidence is "material" if it is related to any fact that is of consequence to the action. *People v Denson*, 500 Mich 385, 401; 902 NW2d 306 (2017). When the proffered evidence demonstrates only propensity, it must be excluded. *Knox*, 469 Mich at 510.

The prosecutor argued that evidence of both scenarios was relevant to defendant's "intent" to have sexual contact with AM and therefore admissible under MRE 404(b). However, Burris never claimed that he accidently or inadvertently touched AM. Rather, his defense was a general denial that the touching occurred. On remand, if the prosecution offers the evidence under MRE 404(b), the trial court must consider whether the other acts evidence is *material* to the facts actually under contention in the case.

The prosecution may again offer the evidence under MCL 768.27a. If so, the trial court should articulate an analysis of the "considerations" set forth in *People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012), which guide whether other-acts evidence admitted under MCL 768.27a is nevertheless subject to exclusion under MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive.

The trial court failed to analyze any of the items in this list. Several factors weigh against admitting the evidence. The other acts bore little similarity to the charged acts. Burris's sexual relationship with then 15-year-old Carter-Matthews began nearly a decade before. The other acts

involved older females, were few in number, isolated in time, and appear unrelated. On remand, the trial court will have an opportunity to reconsider the evidence in this light.

## B. MRE 803A

Over Burris's counsel's objection, the trial court allowed Carter-Matthews to testify regarding statements AM made a day or two after the charged crimes. Counsel raised a hearsay objection, and the prosecutor responded by arguing that the statements were admissible under MRE 803(3), as depicting AM's "then-existing state of mind and her emotional state." The court admitted them on that basis.

MRE 803(3) provides a hearsay exception for the following evidence:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

"[T]he general use of statements of mind that are based on past events . . . violate the purpose of the rule." *People v Moorer*, 262 Mich App 64, 73; 683 NW2d 736 (2004). AM's statements regarding the assaults constituted recollections of past events or, in other words, statements of memory that were being used by the prosecution to prove remembered facts. The trial court erred by admitting the evidence under MRE 803(3).

The prosecutor now contends that the statements were admissible under the tender-years exception to hearsay, MRE 803A, which provides, in relevant part, as follows:

> A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:
>
> (1) the declarant was under the age of ten when the statement was made;
>
> (2) the statement is shown to have been spontaneous and without indication of manufacture;
>
> (3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and
>
> (4) the statement is introduced through the testimony of someone other than the declarant.
>
> If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule . . . .

AM testified that she spontaneously told Jacora Seymore that Burris had touched her. Seymore *denied* that AM had made any such statement. The prosecutor argues that AM's revelations to Carter-Matthews must be considered the "first" under MRE 803A(4).

MRE 803A(4) provides in relevant part:

> A statement may not be admitted under this rule unless the proponent of the statement makes known to the adverse party the intent to offer the statement, and the particulars of the statement, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

The prosecution neglected to file a notice of its intent to offer AM's statements under MRE 803A. Consequently, the facts surrounding the proffered evidence—which were critical to its admissibility—were never evaluated or ascertained by the trial court. On remand, when considering the admissibility of the evidence under MRE 803A, the trial court must evaluate whether the proffered statements were, in fact, the "first" corroborative statements made. That is a question of fact and not a question of law. Similarly, the court must determine whether the statements were "spontaneous," as also required under the rule. See *People v Gursky*, 486 Mich 596, 614; 786 NW2d 579 (2010).

## III. SUMMARY

The trial court deprived Burris of his Sixth Amendment right to counsel of choice, and that error, standing alone, merits a new trial.

We vacate Burris's convictions and sentence, and remand for a new trial. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly

-14-